UNITED STATES of America

v.

Ricky DAVIS and Jerry Deron Jones.

UNITED STATES of America

v.

Jerry Deron JONES.

Crim. A. Nos. 1:93–CR–0234–JOF, 1:94–CR–021–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Aug. 26, 1994.

Gerrilyn Brill, Janet F. King, U.S. Attorney's Office, N.D. Ga., Atlanta, GA, for the government.

Gregory S. Smith, Suzanne Hashimi, L. Burton Finlayson, Federal Defender Program, Inc., Atlanta, GA, Victoria D. Little, Decatur, GA, for defendants.

## ORDER

FORRESTER, District Judge.

This matter is before the court on Defendants' challenge to the sentencing provisions of 21 U.S.C. § 841 which operate to enhance the penalties for offenses involving cocaine base. Jones, who has pled guilty and awaits sentencing, argues that the penalty provisions are void for vagueness, or that they are inapplicable by operation of the rule of lenity because there are two statutory penalties for cocaine. Davis, who has offered to plead guilty conditionally, joins in the latter argument. They are both charged with possession with the intent to distribute cocaine base.

The court held an evidentiary hearing on Defendants' motion on May 31 and June 1, 1994.

Section 841 provides in relevant part:

(b) Penalties

Except as otherwise provided ... any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a violation of subsection (a) of this section involving—

(ii) 1 kilogram or more of a mixture or substance containing a detectable amount of—

(I) coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed;

(II) *cocaine*, its salts, optical and geometric isomers, and salts of isomers;

. . . . .

(iii) 50 grams or more of a mixture or substance described in clause (ii) which contains *cocaine base* ... such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years....

(Emphasis supplied).[1]

## I. FINDINGS OF FACT

An evidentiary hearing was held at which four experts[2] were qualified and testified. The following facts are found by the court based on the testimony at the hearing, and, where noted, are based on the Congressional Record.

Cocaine hydrochloride, that which is often called powdered cocaine, is actually a salt of cocaine. Cocaine is a product which occurs freely in nature in the coca leaf and is the basic building block of other cocaine compounds. Cocaine's molecular formula is $C17 H21 N4$, it has a molecular weight of 303, and it has a melting point of 98 degrees Centi-

---

**1.** Section 841(b)(1)(B)(ii) and (iii) provides a similar framework of penalties for 500 grams or more of the substances as described in § 841(b)(1)(A)(ii)(I)–(IV) and for 5 grams or more of a substance which contains cocaine base.

**2.** Dr. Warren James Woodford was called by the movant. Dr. Woodford has a doctorate in chemistry and has undertaken post-doctoral studies in medicinal chemistry. Mr. Joey Douglas Clark was called by the Government. Mr. Clark has a master's degree in chemistry from the University of Arkansas and since graduation has worked as a forensic chemist in various areas. He has been with the Drug Enforcement Administration for

seven and a half years. Dr. Clinton D. Kilts and Dr. John Marshall Holbrook were called as the court's experts. Dr. Kilts is presently on the faculties of the Department of Psychiatry and the Department of Pathology at the Emory University School of Medicine. Previously he was on the faculties of the Department of Psychiatry and the Department of Pharmacology at the Duke University Medical Center. Dr. Holbrook has a degree in pharmacy and a doctoral degree in pharmacology granted by the University of Mississippi. Both at the University of Mississippi and elsewhere, Dr. Holbrook's areas of interest included controlled substances.

grade. All of the experts testified that in the scientific community, the term "cocaine base" is synonymous with cocaine. In the scientific community, cocaine base has no other meaning. The term is also synonymous with cocaine free base, which means that it is the cocaine molecule, free of other salts and isomers in its basic form.

There was also unanimous agreement among all four experts that the term "crack" as it relates to cocaine substances does not have a fixed meaning in the scientific community. The term crack has its origins with illicit drug abusers.

The first step in the clandestine manufacture of controlled substances containing cocaine is the production of a cocaine paste from the coca leaf. Cocaine and other alkaloids of cocaine are extracted during the refining process. If the refining process is continued, the alkaloids are all chemically converted to the cocaine building block. According to all the experts but Mr. Clarke, in the early 1980's in some cases the clandestine refining process was stopped after the creation of the paste and this paste was poured out on sheets and allowed to harden. It was then "cracked" with a hammer and distributed. The substance was composed of cocaine and a number of cocaine alkaloids.[3] Because cocaine has a low melting point, it can be volatilized and inhaled into the lungs or smoked. It began to be abused in that way. Later, illicit users began producing cocaine or cocaine base from cocaine hydrochloride and exposed the cocaine to organic solvents such as ether during the process. Cocaine or cocaine base is also manufactured by mixing cocaine hydrochloride, water and bicarbonate of soda (baking soda) and heating the mixture. These latter two procedures convert the salt, cocaine hydrochloride, back to the basic form of cocaine. Crack is often seen in chunks or lumps but can be milled to a powder and cocaine hydrochloride can appear lumpy if it is pressed.

In sum, cocaine base describes no other substance than cocaine. It is cocaine which is most readily ingested by inhaling (smoking) because of its low melting point. It is the controlled substance which is intended to be volatilized for smoking.

That which is often identified today in courts as crack is cocaine and perhaps some baking powder.[4] The DEA chemist, Mr. Clarke, testified that DEA chemists today define crack as a lumpy substance containing cocaine and bicarbonate of soda because this is the usage of the enforcement agents. There was no evidence that the lumpiness contributed anything to the potential for abuse, and, of course, other forms of cocaine and its salts and isomers can also appear in lumpy form unless they are milled into fine particles.

Although the focus of the hearing was not on potential for abuse, the pharmacologists advised the court that there are essentially no differences in the sizes of dosage units for cocaine or cocaine hydrochloride. Testimony indicated, however, that cocaine had a higher potential for abuse because it was more easily ingested in a gaseous state than through intravenous injection, and because the onset of the pharmacological effect was quicker because the lungs had so much greater area to absorb the substance quickly. Although individual pieces of crack are relatively inexpensive for the user, the cost of a daily habit for crack or for cocaine hydrochloride is similar, according to the evidence before the Congress.

## II.  CONCLUSIONS OF LAW

■    As can be seen in the statute above, there is one penalty for cocaine and another for cocaine base. It is here contended by the Defendants that in sentencing them, the court should apply the lesser statutory penalties for cocaine rather than hundred-fold greater penalties for the possession of cocaine base. This, it is said, the court is compelled to do, for it must apply the rule of lenity. This rule requires a sentencing court to impose the lesser penalty where there is ambiguity about the reach of a criminal statute or the penalties to be imposed. *Bifulco v. United States,* 447 U.S. 381, 387, *et seq.,*

---

3.  Some of these were highly toxic.

4.  There may also be some cocaine carbonate created, but the testimony on this is uncertain.

100 S.Ct. 2247, 2252, *et seq.*, 65 L.Ed.2d 205 (1980). The policy of lenity is to be applied only where there is actual statutory ambiguity. *United States v. Fisher*, 6 U.S. (2 Cranch) 358, 386, 2 L.Ed. 304 (1805); *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971).

*Bifulco* teaches that in determining whether or not there is facial ambiguity and in endeavoring to resolve it, the court, first, should look at the language and form of the statute, and, second, should look at the legislative history and public policy concerns.

■ Cocaine and cocaine base facially are two separate terms, and a fair first reaction is that the Congress intended to establish different penalties for different substances. The question of course is, what is cocaine base. The Eleventh Circuit in *United States v. Rodriguez*, 980 F.2d 1375, 1377–78 (11th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3003, 125 L.Ed.2d 695 (1993), has said that the Congress used the term "cocaine base" in its scientific meaning. As it did not find what that meaning was, this court held the evidentiary hearing in the case at bar and has now determined, based on the total unanimity of opinion of the four experts, that cocaine and cocaine base are synonymous terms referring to the same substance having the same molecular structure, molecular weight, and melting point. Because it turns out that the definitions are identical, there is unquestioned ambiguity on the face of the statute, and, unless it could be said that the legislative history or public policy concerns alter the outcome, the rule of lenity must be applied, the Defendants' motions granted, and the heightened penalties for cocaine base must be ignored. This court thinks that the positions of the Defendants in this regard are correct.

Other points are now evident to this court: (1) There is no scientific meaning for the term "crack," (2) it is a term developed in the streets, and (3) when an abuser seeks crack cocaine, he is seeking a readily inhalable form of the drug. It is now obvious to this

court that the physical form of the drug or its means of manufacture has no rational relationship to any legislative intention to impose heightened penalties, as they have nothing to do with potential for abuse.[5]

The "crack" cocaine epidemic was sprung upon the Congress in 1986. The first hearings leading to the passage of the statute now at issue were had by the Permanent Subcommittee on Investigations of the Committee on Governmental Affairs of the United States Senate on July 15, 1986. Senator Chiles of Florida was most instrumental in bringing the matter to the Congress's attention. In his opening statement at the hearings he said that eight months ago he had never heard of crack cocaine.[6]

Ultimately, the statutory provisions that are at issue in this case were passed with much fanfare and little debate during Cocaine/Crack Awareness Month in October of 1986. One of the members of the House observed that the bill was "clumsy"; that "it was put together in the style of a Great Society Program. Its hallmarks are lack of coordination, incomplete consideration, misunderstood compromises."[7]

This court has read so much of the Congressional comment as it could locate that occurred prior to the passage of the penalty provisions in issue. While, of course, this court would not pretend to know what the members of Congress actually understood, it would seem the most reasonable view of legislative intent based on what was said in the Congress during 1986 is that the Congress intended that the new penalties would not apply to cocaine or cocaine hydrochloride, that they would apply to a drug known as crack, which was new and was a mixture (not reaction) of baking soda and cocaine hydrochloride, and that it was more addictive than cocaine hydrochloride because it was smokable. There is no hint that the Congress intended to heighten the penalty for cocaine either as it naturally occurs or as it is produced by manufacture by any other process-

5. *See infra* at note 22.

6. Hearings at 7.

7. 132 Cong.Rec. H10776–04 (daily ed. October 17, 1986) (statement of Rep. Frenzel).

es or as it may be a by-product of any other process.[8]

Through the following quotes from the Congressional Record, the court hopes to impart its sense of Congressional understanding.

1. "Crack is simply a variant on 'free basing,' which is the conversion of sniffable cocaine crystals into a smoking 'base' form of the drug.... Dealers make crack by mixing cocaine with common baking soda and water, creating a paste that is usually at least seventy-five percent cocaine...."[9]

2. "What is crack? Crack is a variation on cocaine. I'm not going to contribute to the problem by describing how crack is made. It should be enough to know that this deadly substance can be produced by combining cocaine with products that are found in the family kitchen. What results when the process is finished is a white substance that resembles soap or a whitish gravel."[10]

3. "What exactly is crack?

"It's a kind of dealer prepared cocaine free base, in which powdered coke is mixed with baking soda and water to form a paste. After the concoction hardens, it looks like off-white granulated sugar; it is broken into chips or tiny lumps."[11]

4. "Crack cocaine is cocaine in crystal or nugget form and is made by 'cooking' powdered cocaine over a kitchen stove or a bunsen burner. The base of the cocaine hydrochloride is released. This purified cocaine is then mixed with common baking soda and water to form nuggets or crack cocaine."[12]

5. "Mr. President, six months ago, I did not know about the dangers of rock and crack cocaine."[13]

"Rock and crack cocaine are relatively new forms of cocaine which are free base cocaine—cocaine whose hydrochloride has been released by heat. The heating of the cocaine with baking soda and water leaves a residue—this is cocaine free base which is almost a pure narcotic and therefore lethal and potent. The residue paste is allowed to dry and then is broken up into nuggets or slithers for distribution.

"The nuggets are 'rocks.' The slithers are 'crack.'"

6. "Crack is made by heating cocaine with baking soda and water and then allowing the paste to harden. Pieces are cut and sold as crack."[14]

7. "It is the use of 'smokable cocaine,' known as crack, that has intensified the epidemic and forced everyone to take notice. Crack probably poses the greatest drug threat to users in society today...."[15]

8. "For example, twenty-five grams of crack or 500 grams of cocaine (sic) will, under this bill, trigger the maximum sentence under current law...."[16]

9. "Whereas cocaine may be smoked if the drug is subject to certain procedures designed to harden the drug;

---

8. Because very few chemical reactions change all of the basic elements, cocaine is likely to be found in samples of cocaine hydrochloride. Under the statutory scheme it is possible to apply the cocaine base penalties to coca leaves and samples of cocaine hydrochloride containing trace amounts of cocaine.

9. 132 Cong.Rec. S2489 (daily ed. March 12, 1986) (statement of Sen. Hawkins).

10. 132 Cong.Rec. S4706 (daily ed. April 23, 1986) (statement of Sen. Hawkins).

11. 132 Cong.Rec. S5436 (daily ed. May 6, 1986) (statement of Sen. Chiles).

12. 132 Cong.Rec. S6968 (daily ed. June 2, 1986) (statement of Sen. Hawkins).

13. 132 Cong.Rec. S7636 (daily ed. June 17, 1986) (statement of Sen. Chiles).

14. 132 Cong.Rec. E2328 (daily ed. June 26, 1986) (statement of Rep. Biaggi).

15. 132 Cong.Rec. E2528 (daily ed. July 22, 1986) (statement of Rep. Garcia).

16. 132 Cong.Rec. S11973 (daily ed. Aug. 11, 1986) (statement of Sen. D'Amato). It should be noted that it was Senator D'Amato's draft of the penalty provisions which was ultimately enacted into law.

"Whereas the form of cocaine that may be smoked is commonly known as crack." [17]

10. "Mr. President, in a hearing last month, the Permanent Subcommittee on Investigations learned about the dangers of crack, the smokable form of cocaine." [18]

11. "This bill lowers the threshold quantity of drugs necessary to trigger the maximum sentence available under our laws. For example, twenty-five grams of crack or 500 grams of cocaine (sic) will under this bill trigger the maximum sentence." [19]

12. "A new form of free base cocaine called crack is now becoming a major problem in many cities." [20]

13. "In the meantime, cocaine has emerged as a derivative of the natural coca leaf—which itself has stimulant qualities. Chemistry refined it to a higher, more intense level. Recently we have seen cocaine brought to a higher level, to what is called 'crack' because of the sound that is made when it is cooked." [21]

14. "I am very pleased that the Senate bill recognizes crack as a distinct and separate drug from cocaine hydrochloride...." [22]

15. "I am very pleased that the Senate bill recognizes crack as a distinct and separate drug from cocaine hydrochloride with specified amounts of five grams and fifty-grams for enhanced penalties...." [23]

It is now known that cocaine, irrespective of the means of manufacture, is smokable, and there is nothing to contradict the Congress' belief that smoking cocaine has a particularly heightened potential for abuse. From the quoted portions of the Congressional Record, it is clear, however, that if Congress had any particular substance in mind when it enacted the heightened penalties, it was to deter the manufacture of cocaine by mixing cocaine hydrochloride with baking soda and water.[24] Consequently, if it could be said that a definition for cocaine base could be had through an examination of the legislative history without leaving the court to guesswork, it would be that the Congress intended to criminalize cocaine produced by only one means of manufacture.

As pointed out, the means of manufacture of cocaine has no effect on its potential for abuse. If a court were to believe that it could arrive at the meaning of cocaine base through the legislative history without speculation, the definition that it would reach is the same one that the Sentencing Commission of late has reached. The Eleventh Circuit has interpreted the recent pronouncement of the Sentencing Commission as holding that forms of cocaine base other than crack are to be treated as cocaine hydrochloride and that crack is *a* form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate and usually appearing in a lumpy, rock-like form. U.S.S.G. § 2D1.1(c). *See generally United States v. Munoz–Realpe,* 21 F.3d 375 (11th Cir.1994).

■ If the legislative history is read as suggesting that Congress intended to raise the penalties on the form of cocaine base produced by reaction with baking soda, the court would be compelled to invalidate the

---

**17.** 132 Cong.Rec. S11266 (daily ed. Aug. 11, 1986) (statement of Sen. Roth). These comments were made in connection with the introduction of Senate Resolution 464 designating October 1986 as "Crack/Cocaine Awareness Month."

**18.** *Id.*

**19.** 132 Cong.Rec. S11973 (daily ed. Aug. 15, 1986) (statement of Sen. D'Amato).

**20.** 132 Cong.Rec. H6519 (daily ed. Sept. 10, 1986) (statement of Rep. Traficant). This is quote from the House proceedings incident to the consideration of one of the bills which would have raised the penalties for cocaine base or crack.

**21.** 132 Cong.Rec. S13741 (daily ed. September 26, 1986) (statement of Sen. Moynihan).

**22.** 132 Cong.Rec. S14270 (daily ed. September 30, 1986) (statement of Sen. Chiles).

**23.** 132 Cong.Rec. S14270 (daily ed. September 30, 1986) (statement of Sen. Chiles).

**24.** It is not evident to this court that the Congress understood the effect of this process. There are repeated definitions of the substance being a mixture of cocaine, bicarbonate of soda and water, which, of course, is different from cocaine obtained by removing the hydrochloride with baking soda and water.

(iii) penalty provisions on an equal protection theory.[25] So far as this court can determine, there is no rational basis for having heightened penalties for cocaine or cocaine base derived only by one means of manufacture, when it is clear beyond doubt that all forms of cocaine are equally smokable and, therefore, equally dangerous and where it appears that several forms of cocaine have in fact been abused in this country.

■ Because of the holding in *Rodriguez*, this court makes no finding based on an analysis of the legislative history. Were it to do so, it would find that the analysis would not aid in removing the ambiguity because, on the basis of all that is before it, it can only guess at what Congress intended, and that is insufficient for the resolution of am ambiguity. *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958). *See also Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971).

### III. CONCLUSION

The court is reluctant to reach the result announced herein. It fully understands the far-reaching consequences of its view. It is comforted that Justice Burger experienced similar anxiety when the Supreme Court invalidated another drug penalty provision in *Bifulco, supra*. In specially concurring, the Chief Justice said:

Particularly in the administration of criminal justice, a badly drawn statute places strains on judges. The temptation to exceed our limited judicial role and do what we regard as the more sensible thing is great, but it takes us on a slippery slope. Our duty, to paraphrase Mr. Justice Holmes in a conversation with Judge Learned Hand, is not to do justice but to apply the law and hope that justice is done. *The Spirit of Liberty: Papers and Addresses of Learned Hand* 306–307 (Dilliard ed. 1960).

However, despite those concerns, the court must conclude based on the evidence before it that cocaine base is a term synonymous with cocaine, that as a result the penalty provisions of § 841 set out a scientifically meaningless distinction between cocaine and cocaine base, and that the heightened penalty provision for cocaine base must be ignored by operation of the rule of lenity.

IT IS SO ORDERED.

---

25. The Fifth Amendment has been interpreted to imply an equal protection component forbidding discrimination which is "so unjustifiable as to be violative of due process." *Bolling v. Sharpe*, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). The Supreme Court has approached Fifth Amendment equal protection claims in precisely the same manner in which it has approached equal protection claims under the Fourteenth Amendment. *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514 (1975). Where a statute does not discriminate "on the basis of a suspect classification [or] on the exercise of a fundamental right," the statute will be held valid absent evidence that it is not rationally related to a legitimate governmental interest. *United States v. Solomon*, 848 F.2d 156, 157 (11th Cir.1988). *See also Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080–81, 67 L.Ed.2d 186 (1981).

The Eleventh Circuit has addressed an equal protection challenge to the sentencing provisions of § 841, concluding that Congress's decision to penalize offenses involving a small amount of pure cocaine as severely as offenses involving a much larger amount of "cut" cocaine was rationally related to its objective of protecting the public health and welfare. *United States v. Holmes*, 838 F.2d 1175, 1177 (11th Cir.1988). However, the issue here considered is whether the distinction between cocaine base produced by reaction with baking soda rather than via some other method of production is rationally related to the same objective. Because the court concludes that all forms of cocaine are smokable and that the heightened danger comes from the method of introduction of cocaine into the body by smoking rather than from the form of the cocaine which is smoked, the court would be required to conclude that penalizing one form of smokable cocaine more severely than other forms is irrational and thus violates equal protection.