46 F.3d 1129
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charlie WARD, Sr., Defendant-Appellant.
 No. 94-5002.
 United States Court of Appeals, Fourth Circuit.
 Jan. 18, 1995.
Submitted: December 20, 1994.
Decided: January 18, 1995.
 
 William E. Martin, Federal Public Defender, John Stuart Bruce, Deputy Federal Public Defender, Greensboro, NC, for Appellant.
 Walter C. Holton, Jr., United States Attorney, Sandra J. Hairston, Special Assistant United States Attorney, Duncan B. McCormick, Third Year Law Student, Steven Geoffrey Keating, Third Year Law Student, Greensboro, NC, for Appellee.
 Before WIDENER, MURNAGHAN, and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Charlie Ward, Sr., was convicted by a jury of conspiracy to possess with intent to distribute cocaine and cocaine base ("crack"), 21 U.S.C.A. Secs. 846, 841 (West 1981 & Supp.1994), and received a sentence of 188 months imprisonment. He appeals his sentence on the grounds that the district court plainly erred in sentencing him under the penalties for crack offenses set out in Sec. 841(b)(1)(A), and clearly erred in determining the amount of crack attributable to him for sentencing purposes, USSG Sec. 2D1.1,[1] and in finding that he was not a minor participant, USSG Sec. 3B1.2(b). We affirm.
 
 
 2
 At Ward's trial, co-defendant Robert Wiggins testified that in October 1992 Ward invited him to come from Trenton, New Jersey, where he and Ward grew up together, to Greensboro, North Carolina, to sell crack. Wiggins, Samuel Ball, and Brian Blakely came to Greensboro a short time later. Wiggins brought 250 grams of cocaine powder which he had purchased in New York for $5000. They all stayed at Ward's residence for a few days. During that time, 200 grams of cocaine was cooked into cocaine base, or crack, and divided between Ball and Ward. It was agreed that the 250 grams of cocaine would sell for $15,000 when cooked into crack, of which Wiggins would received $8000, Ball would receive $4000, and Ward and Blakely would each receive $1500. Ward's share was his reward for selling some crack and showing the others around. Ward took the others to a housing project where he introduced them to some of his customers, and gave out samples of crack as well as his pager number.
 
 
 3
 Ball and Blakely moved into a room at the Oaks Motel rented by Ward's girlfriend, Deborah Wright, while Wiggins rented a room at the Homestead Lodge using the name "Michael Parker." Wiggins returned to New Jersey and on November 12, 1992, brought another 250 grams of cocaine to Ward's residence; it was cooked into crack at Ward's house and then sold. Around this time, Ward took Wiggins, Ball, Blakely, and Kenneth Odom (who accompanied Wiggins on the second trip from New Jersey) to get photographs taken for false identification documents. He also supplied Wiggins with a false North Carolina birth certificate.
 
 
 4
 On November 15, Wiggins' girlfriend arrived in Greensboro with another 500 grams of cocaine. Ward and Wiggins met her at the train station and went to Ward's place. That night and the next day, the cocaine was diluted and cooked into about 600 grams of crack at Ward's home while he was present. Ball took the crack to the Homestead Lodge.
 
 
 5
 On November 16, police detectives executed a search warrant on Ball's room at the Oaks Motel. They arrested Ball and seized a small amount of crack, several firearms, cash, a pager, and the keys to Ward's car. An undercover detective called a number on the pager, which turned out to be Wiggins' cousin in New Jersey, the real Michael Parker. Parker said he had just sent a package to "Bob [Wiggins]." Meanwhile, Ward and Wiggins hired a lawyer for Ball, and obtained a photo identification in the name "Cornelius Walker," the name Ball had given at his arrest.
 
 
 6
 Later the same day, Odom was arrested while driving with Blakely in Ward's car. Blakely escaped, leaving behind his jacket, which contained crack, cocaine, razor blades, and $2000 in cash. Odom directed the detectives to Ward's apartment, where Ward consented to a search. Wiggins, who was present, had nearly $3000 in cash in his pocket and another $10,000 in cash belonging to Wiggins was in a plastic bag under the sofa. Wiggins was arrested.
 
 
 7
 On November 17, 1992, a search warrant was executed on the room Wiggins--and later Blakely--had used at the Homestead Lodge. Above the ceiling panels, police found 586.5 grams of crack, 99.6 grams of cocaine, three firearms, and thousands of small plastic bags.
 
 
 8
 Following Ward's conviction on the conspiracy charge, the probation officer recommended that the 620.3 grams of crack and 103.8 grams of cocaine powder which were seized were attributable to him as relevant conduct. This gave him a base offense level of thirty-six (500 grams-1.5 kilograms cocaine base). Ward objected that it was not reasonably foreseeable to him that Wiggins and the others would distribute more than 500 grams of crack. He also asserted without explanation that cocaine powder rather than crack should be used to calculate his sentence. Finally, in a memorandum submitted to the district court at the sentencing hearing, Ward challenged the constitutionality of the crack penalties, asked the district court to find both Sec. 841 and guideline section 2D1.1 unconstitutional on due process and equal protection grounds and, alternatively, requested a downward departure. As part of his equal protection argument, Ward asserted that cocaine and cocaine base are indistinguishable. Without reviewing the lengthy memorandum, the district court declined to depart on due process or equal protection grounds, noting that the crack penalties had been upheld by appeals courts against similar challenges.
 
 
 9
 On appeal, Ward argues that cocaine base and cocaine are chemically the same substance, that the distinction made between them in the statute renders it ambiguous, and that the rule of lenity requires use of the lesser penalty. Ward relies on United States v. Davis, --- F.Supp. ----, 1994 WL 487849 (N.D. Ga., Aug. 26, 1994). The district court in Davis heard testimony from four experts and determined that there is no significant difference between cocaine and cocaine base because they have the same molecular structure, molecular weight, melting point, and effect on the user. The court decided that the rule of lenity required that the penalties for cocaine base be ignored. Because this is not the argument Ward made in the district court, we review it under the plain error standard.[2] United States v. Olano, 61 U.S.L.W. 4421 (U.S.1993). Reversal under this standard may occur if the appeals court identifies an error which is plain, which affects substantial rights, and which seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Brewer, 1 F.3d 1430, 1434-35 (4th Cir.1993).
 
 
 10
 The question Ward raises has apparently not been addressed directly by this Court or other appeals courts. However, in considering whether "crack" is "cocaine base," the courts have noted differences between cocaine powder and the hard, smokable form, and have concluded that they are distinct substances, whatever their chemical properties. See United States v. Lopez-Gil, 965 F.2d 1124, 1130 (1st Cir.) (cocaine user has two forms available: cocaine for snorting and crack for smoking), cert. dismissed, 112 S.Ct. 2959, cert. denied, 61 U.S.L.W. 3355 (U.S.1992); United States v. Shaw, 936 F.2d 412, 415-16 (9th Cir.1991) (cocaine base or crack distinguishable from cocaine hydrochloride by different functions and effects). In addition, contrary to the district court's finding in Davis, the Third Circuit has described cocaine base, or crack, as having a different molecular structure and weight, a different melting point, and a different effect on the body. United States v. Jones, 979 F.2d 317, 319 (3d Cir.1992). Consequently, any error in this respect was not plain error.
 
 
 11
 Contesting the amount of crack attributed to him, Ward testified at sentencing that he did not distribute crack with Wiggins and the others, or know the amounts they were selling, and that he merely allowed the conspirators to use his home and car, and performed other favors for them, in return for crack for his personal use which totaled about fifty grams. A defendant is responsible for drug amounts handled by co-conspirators if those amounts were foreseeable to him and in furtherance of the jointly undertaken criminal activity to which he agreed. USSG Sec. 1B1.3(a); United States v. Banks, 10 F.3d 1044, 1057 (4th Cir.1993), cert. denied, 62 U.S.L.W. 3755 and 62 U.S.L.W. 3825 (U.S.1994). The district court found that the 620 grams of crack which were seized were properly attributed to Ward based on the trial testimony of Wiggins and Ball, which the court found more credible than Ward's. Credibility determinations are not reviewable on appeal. United States v. Saunders, 886 F.2d 56, 60 (4th Cir.1989). Because the trial testimony showed that Ward was directly involved with over 500 grams of crack, the district court did not clearly err in using that amount to determine his base offense level.
 
 
 12
 Last, Ward contends that he was a minor participant in that he was merely a drug addict who was used by Wiggins and the others, and was willing to help them in return for small amounts of cocaine. However, Ward initiated the conspiracy and provided assistance in many ways to Wiggins and the others once it was underway. Moreover, Wiggins testified that Ward was not just a user, but also sold drugs. In a drug conspiracy, a seller does not have a minor role. United States v. Brooks, 957 F.2d 1138, 1149 (4th Cir.), cert. denied, 60 U.S.L.W. 3879 (U.S.1992). The district court did not clearly err in finding that Ward was more than a minor participant.
 
 
 13
 The sentence imposed by the district court is therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 United States Sentencing Commission, Guidelines Manual (Nov.1992)
 
 
 [2]
 In his reply brief, Ward asserts that he raised the issue in his objections to the presentence report. However, the district court was not asked to decide whether cocaine and cocaine base are indistinguishable substances