52 F.3d 322
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Michael HAMILTON, a/k/a Stacy, a/k/a James Jones, Defendant-Appellant.
 No. 94-5593.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 31, 1995.
Decided April 20, 1995.
 
 William E. Martin, Federal Public Defender, Gregory Davis, Assistant Federal Public Defender, Greensboro, North Carolina, for Appellant.
 Walter C. Holton, Jr., United States Attorney, David B. Smith, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 Before MURNAGHAN, HAMILTON, and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Michael Hamilton appeals his conviction and sentence for violations of 21 U.S.C.A. Secs. 841(a)(1), (b)(1)(A) (West 1981 & Supp.1994), and 18 U.S.C. Sec. 2 (1988). Finding no error, we affirm.
 
 
 2
 Hamilton and co-defendant Lynn Marie Wick were charged in a one-count indictment with possessing with intent to distribute 116 grams of cocaine base ("crack").[1] Hamilton pled not guilty. A jury convicted him of the charges. The district court sentenced Hamilton to two hundred months imprisonment, five years supervised release, and a special assessment of $50.
 
 
 3
 The facts surrounding this case are relatively straightforward. Wick, Hamilton's co-defendant, was the Government's chief witness. Wick met Hamilton, whom she knew as "Stacy," in February 1994 in Brooklyn, New York. Wick was staying with Carla Smith when she met Hamilton. Smith and Hamilton have a child together. Several days after meeting Wick, Hamilton inquired about her financial situation. Wick told Hamilton she was unemployed. Several days later, Hamilton asked Wick to carry drugs for him to Durham, North Carolina, in exchange for $300 or $400. Wick agreed.
 
 
 4
 Hamilton sent Wick to Calendar Travel in Brooklyn to purchase two Amtrak tickets. Hamilton paid for both tickets; one was in Wick's name and the other was in the name of James Jones. Hamilton told Wick that she "wouldn't be confronted or be looked upon with suspicion."
 
 
 5
 Around 4:00 a.m. on February 24, 1994, Hamilton and another young man came to Smith's apartment and gave Wick a bag contain ing the crack. Wick placed the drugs into a gray make-up bag with some clothing. Hamilton, Wick, and the young man then drove to the train terminal. While driving to the terminal, Hamilton told Wick that they would sit separately on the train to Durham. At Hamilton's direction, the young man in the car wrote down the address, telephone number, and name of a contact person in Durham on Wick's ticket.[2] When the train arrived in Durham, two detectives approached Hamilton shortly after he emerged from the train. The detectives identified themselves and asked Hamilton if he would speak with them. Hamilton identified himself as James Jones and showed the men his train ticket in that name. One detective asked Hamilton if he had any narcotics or weapons on his person, and Hamilton replied that he did not. The detective asked whether Hamilton would consent to a search of his person; Hamilton consented. The detectives searched Hamilton but found no weapons or narcotics. Hamilton was allowed to leave the train station.
 
 
 6
 Meanwhile, Wick emerged from the train and carried the gray bag to a pay phone. She dialed the phone number on her ticket. No one answered. A police officer approached and asked to see her ticket and identification. Wick ultimately consented to a search of her bag. Wick identified Hamilton as the owner of the drugs and described his clothing to the police. During their transfer from Greensboro to WinstonSalem for a court appearance, Hamilton instructed Wick not to tell anyone that she knew him or that the drugs belonged to him. Hamilton promised to pay Wick $5,000.
 
 
 7
 The next Government witness was Andre Holman. Holman met Hamilton, whom he also knew as "Stacy," after his January 1994 release from prison. In February 1994, Holman went to Durham because of a family member's illness. Holman stayed with his cousin, Olympia Ann Hayes, at 143-L Commerce Place in Durham. The phone number at that address is 682-7577. Hamilton called Holman at that number on February 21, 1994, and stated that he was coming to visit and asked for directions and the address.
 
 
 8
 On February 24, Holman saw Hamilton approach the apartment from the train station, dressed in an army jacket. Hamilton told Holman about his encounter with officers at the train station. While the two men were walking toward the train station, they were stopped by the police, and Hamilton was arrested.
 
 
 9
 Detective Bruce Black testified that he was working drug interdiction at the Durham Amtrak station on February 24, 1994, when he observed Wick at a pay phone. During inquiry by Black and Detective Milton Austin, Wick consented to a search of her bag, which contained crack cocaine. In her post arrest interview, Wick admitted her involvement and that of "Stacy."
 
 
 10
 Finally, the Government presented the testimony of Detective Austin. Austin stated that he observed Hamilton emerge from the train. Austin approached Hamilton near an exit. Hamilton identified himself as James Jones and provided a train ticket with that name on it. Hamilton consented to a search of his person for drugs or weapons and then left the area.
 
 
 11
 Later, Austin approached Wick and continued his interdiction duties. Wick admitted carrying drugs, consented to a search of her bag, and stated "she was bringing the narcotics for the young man that we spoke to at the bottom of the steps, with the green army jacket." Wick identified the man as "Stacy." The writing on Wick's ticket revealed an address of 143 Commerce Street, Apartment L. The officers drove toward 143 Commerce and saw Hamilton and Holman walking toward the Amtrak station. Hamilton was arrested based on Wick's statements and the drugs recovered from her bag.
 
 
 12
 The Government rested its case, and the defense moved for judgment of acquittal. The district court denied the motion. Hamilton was sentenced two months later, and timely appealed his conviction and sentence.
 
 
 13
 Hamilton assigns two errors on appeal: (1) that the district court erred in denying his motion for acquittal; and (2) that the district court erred in sentencing him under the United States Sentencing Guidelines provisions for crack cocaine.
 
 
 14
 We will not overturn a verdict if there is substantial evidence, taking the view most favorable to the government, to support the finding of guilt. Glasser v. United States, 315 U.S. 60, 80 (1942). The question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The uncorroborated testimony of an accomplice may be sufficient to sustain a guilty verdict. United States v. Burnes, 990 F.2d 1426, 1439 (4th Cir.), cert. denied, 61 U.S.L.W. 3819 (U.S.1993); United States v. Manbeck, 744 F.2d 360, 392 (4th Cir.1984), cert. denied, 469 U.S. 1217 (1985).
 
 
 15
 Here, the Government was required to prove that Hamilton knowingly possessed a controlled substance with the intent to distribute or manufacture. United States v. Crockett, 813 F.2d 1310, 1316 (4th Cir.), cert. denied, 484 U.S. 834 (1987). Possession may be actual or constructive and may be joint. United States v. Schocket, 753 F.2d 336, 340 (4th Cir.1985).
 
 
 16
 To establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed. United States v. Blue, 957 F.2d 106 (4th Cir.1992). Constructive possession may be shown by direct or circumstantial evidence. United States v. Laughman, 618 F.2d 1067, 1077 (4th Cir.), cert. denied, 447 U.S. 925 (1980). Possession of a large amount of drugs among several people working together may be sufficient to show that each has constructive possession. United States v. Watkins, 662 F.2d 1090, 1097-98 (4th Cir.1981), cert. denied, 455 U.S. 989 (1982). A defendant's intent may be inferred from quantities too large for personal consumption. United States v. Nelson, 6 F.3d 1049, 1053 (4th Cir.1993), cert. denied, 62 U.S.L.W. 3792 (U.S.1994). Moreover, a conviction for aiding and abetting pursuant to 18 U.S.C. Sec. 2 requires only a defendant's participation in some stage of the offense with knowledge of the result and the intent to bring about that result. United States v. Arrington, 719 F.2d 701, 705 (4th Cir.1983), cert. denied, 465 U.S. 1028 (1984).
 
 
 17
 The evidence adduced at trial established that Hamilton recruited Wick as a drug courier. Hamilton provided the money for Wick to purchase her train ticket to Durham. Hamilton also gave Wick the drugs to be transported and the name, address, and telephone number of the person she was to contact upon her arrival in Durham. Hamilton accompanied Wick on the train ride to Durham, although they did not sit together. Finally, after their arrests, Hamilton offered Wick $5,000 if she would not say that the drugs belonged to him.
 
 
 18
 Viewing that evidence in the light most favorable to the Government, we find that a rational trier of fact could have found the elements of the crimes charged beyond a reasonable doubt. Accordingly, we affirm the district court's order denying Hamilton's motion for acquittal.
 
 
 19
 Hamilton next asserts that the district court erred at sentencing by using the heightened statutory penalty and sentencing guideline for "cocaine base." Hamilton urges that because the term "cocaine base" is synonymous with "cocaine," the rule of lenity requires the application of the lesser penalty. We disagree.
 
 
 20
 The statute at issue here, 21 U.S.C.A. Sec. 841(b), provides an explicit penalty distinction between cocaine and cocaine base. The penalty distinction is also reflected in the United States Sentencing Commission, Guidelines Manual, Sec. 2D1.1 (Nov.1993). Moreover, we have recognized that cocaine base, as defined in the statute, is a specific form of cocaine. United States v. Pinto, 905 F.2d 47, 49 (4th Cir.1990). Cocaine base has a specific definition in law. Id.; U.S.S.G. Sec. 2D1.1.
 
 
 21
 Hamilton relies on United States v. Davis, 864 F.Supp. 1303 (N.D. Ga.1994), to support his contention that the rule of lenity applies here and requires that he be sentenced under the lesser penalties for cocaine rather than cocaine base. In Davis, a federal district court in Georgia held that there is no pharmacological difference between cocaine and cocaine base. Accordingly, because the court found that a statutory ambiguity existed, the court applied the rule of lenity. Davis is not controlling precedent in this Court. Furthermore, our decision in Pinto established that cocaine base and cocaine are chemically and definitionally distinct for punishment purposes under 21 U.S.C.A. Sec. 841(b). To apply the rule of lenity, there must first be a statutory ambiguity. Chapman v. United States, 500 U.S. 453 (1991).
 
 
 22
 Because there is no statutory ambiguity in Sec. 841(b), the rule of lenity does not apply in this case.
 
 
 23
 Accordingly, we affirm Hamilton's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 [1]
 Wick is not a party to this appeal
 
 
 [2]
 The train ticket, which was the Government's first exhibit, contained the following information: "143 Commerce, Apartment L, Ann, 682-7577."