68 F.3d 477
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cedric HATCHETT, Defendant-Appellant.
 No. 95-1892.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 2, 1995.
Decided Oct. 19, 1995.
 
 Before BAUER, COFFEY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Cedric Hatchett pleaded guilty to possession of cocaine base (crack cocaine) with the intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1), and carrying a firearm during the commission of a drug felony in violation of 18 U.S.C. Sec. 924(c). Hatchett was sentenced to an aggregate 180-month term of imprisonment to be followed by an eight-year term of supervised release. Hatchett appeals the district court's order denying his motion to withdraw his guilty plea and his sentence. Affirmed.
 
 PROCEDURAL HISTORY
 
 2
 On April 6, 1994, the government filed a three-count indictment charging Hatchett with possession of cocaine base with the intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) (Count I), using or carrying a firearm during the commission of a drug felony in violation of 18 U.S.C. Sec. 924(c) (Count II), and possession of a firearm after being convicted of a felony in violation of 18 U.S.C. Sec. 922(g) (Count III). On October 11, 1994, Hatchett pleaded guilty to Counts I and II, and the government dismissed Count III. On December 19, 1994, Hatchett's original counsel, James E. Shadid, withdrew from the case and new counsel, John F. Leuck, was appointed. On January 27, 1995, before sentencing, Leuck filed a motion to withdraw Hatchett's guilty plea. A hearing on the motion to withdraw the plea was held on February 8, 1995. The district court denied Hatchett's motion to withdraw the plea and Hatchett was sentenced on March 28, 1995. The defendant had an offense level of 25 and a criminal history category of V. Hence, the applicable guidelines range on Count I was 100 to 125 months' imprisonment. The district court imposed the mandatory minimum sentence of 120 months, 21 U.S.C. Sec. 841(b)(1)(B)(iii). Pursuant to U.S.S.G. Sec. 2K2.4(a) and 18 U.S.C. Sec. 924(c)(1), Hatchett's sentence on Count II was required to be imposed consecutive to Count I. Since Count II carried a mandatory sentence of 60 months, Sec. 924(c)(1), Hatchett was sentenced to an aggregate term of 180 months' imprisonment to be followed by an eight-year term of supervised release. Hatchett appeals.
 
 ISSUES
 
 3
 On appeal, Hatchett argues that the district court erred in denying his motion to withdraw his plea of guilty, and that the sentencing provisions of 21 U.S.C. Sec. 841(b) and U.S.S.G. Sec. 2D1.1(c) are in violation of the Equal Protection Clause of the Fifth Amendment.
 
 GUILTY PLEA
 
 4
 Initially, Hatchett maintains that the district court erred in denying his motion to withdraw his guilty plea. Hatchett alleges that he did not knowingly and voluntarily enter into a plea of guilty since (1) he was confused as to the charges to which he was pleading guilty; (2) counsel was ineffective because he repeatedly encouraged Hatchett to plead guilty, he had limited contact with him and discussed the plea agreement only briefly, and during his representation of Hatchett he represented another individual in an unrelated case who provided the government with information that incriminated Hatchett in criminal activity; and (3) his guilty plea was the result of an unstable mental condition and extreme stress, and his understanding that he would be transferred out of the Peoria County Jail in exchange for his plea (Hatchett had been in custody at the Peoria County Jail since his arrest).
 
 
 5
 Guilty pleas are, generally, considered final and there is no absolute right to withdraw a guilty plea. See Marx v. United States, 930 F.2d 1246, 1250 (7th Cir. 1991), cert. denied, 503 U.S. 939 (1992); United States v. Alvarez-Quiroga, 901 F.2d 1433, 1436 (7th Cir.), cert. denied, 498 U.S. 875 (1990). Hence, the decision to grant or deny a motion to withdraw a guilty plea is within the discretion of the district court and will be reversed only for an abuse of that discretion. Marx, 930 F.2d at 1250. In reviewing a denial of a motion to withdraw a guilty plea, "we rely on Federal Rule of Criminal Procedure 32(d) which states that a court may permit withdrawal of a guilty plea before sentencing 'upon a showing by the defendant of any fair and just reason."' United States v. Messino, 55 F.3d 1241, 1247 (7th Cir. 1995) (quoting Fed. R. Crim. P. 32(d)). One "fair and just" reason for withdrawal of a guilty plea is that it was not knowing or voluntary. Brady v. United States, 397 U.S. 742, 748 (1970) (a guilty plea is valid only if it was both knowing and voluntary). See also United States v. Nash, 29 F.3d 1195, 1198 (7th Cir. 1994); United States v. Ellison, 835 F.2d 687, 692-93 (7th Cir. 1987). "The district court's findings regarding whether the defendant has 'fair and just' reasons for withdrawal will be upheld unless they are clearly erroneous." Messino, 55 F.3d at 1247 (citing United States v. LeDonne, 21 F.3d 1418, 1423 (7th Cir.), cert. denied, 115 S. Ct. 584 (1994)).
 
 
 6
 Hatchett claims that he was under the mistaken impression that he was pleading guilty to Counts I and III of the indictment and that Count I would be amended to charge him with possession of only 4.8 grams of crack cocaine. We have held:
 
 
 7
 "[C]laims of involuntariness or confusion that in the abstract seem like sufficient reasons to allow a defendant to withdraw his plea, or at least look into the matter further, may be insufficient in the context of a record containing substantial indications of voluntariness and lack of confusion. One especially important consideration is the defendant's answers to the questions posed at his Rule 11 hearing ...."
 
 
 8
 Messino, 55 F.3d at 1248 (quoting United States v. Trussel, 961 F.2d 685, 689 (7th Cir. 1992)). Hence, "'[t]he district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions at the Rule 11 hearing."' Messino, 55 F.3d at 1248 (quoting United States v. Groll, 992 F.2d 755, 758 (7th Cir. 1993)). See also United States v. Seybold, 979 F.2d 582, 587 (7th Cir. 1992), cert. denied, 113 S. Ct. 2980 (1993).
 
 Rule 11 provides, in pertinent part:
 
 9
 (c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands
 
 
 10
 * * *
 
 
 11
 (1) the nature of the charge to which the plea is offered ....
 
 
 12
 Fed. R. Crim. P. 11(c)(1). Here the district court conducted a hearing ensuring that Hatchett fully understood the nature of the charges to which he was pleading guilty.
 
 
 13
 At the guilty plea colloquy, Hatchett informed the district court that he had fully discussed the charges against him with his attorney, and that he understood the consequences of his plea. (R.16 at 6, 8-11.) Hatchett acknowledged that he was charged in Count I with knowingly possessing more than five grams of crack cocaine with the intent to distribute, in Count II with using a firearm in connection with a drug felony, and in Count III with knowingly possessing a firearm after being convicted of a felony. Id. at 7. The court recited the operative terms of the plea agreement; that Hatchett would agree to plead guilty to Counts I and II and that the government would move to dismiss Count III. Id. The court also ensured that Hatchett understood the ramifications of his plea - he was advised of the mandatory minimum and maximum penalties for Counts I and II. Id. at 7-8. The district court then recited Counts I and II and directed Hatchett to recite the factual basis for these counts, which he did. Id. at 16-20. The government, in its offer of proof, provided an independent factual basis for the plea. Id. at 20-21. The court asked Hatchett if the government's factual basis was accurate and Hatchett stated that it was. Id. at 21. Finally, the district court asked Hatchett how he pleaded to Counts I and II and Hatchett responded that he pleaded guilty. Id. at 21. Clearly, the district court was entitled to rely upon Hatchett's responses at the plea colloquy in finding that he understood the nature of the charges to which he was pleading guilty.
 
 
 14
 This finding is also supported by both the written plea agreement filed with the court as well as the transcript of the hearing on Hatchett's motion to withdraw his guilty plea. In the written plea agreement signed by Hatchett prior to the change of plea hearing, Hatchett acknowledged that he had read the agreement and discussed it with his attorney. (R.10 at 8-9.) More importantly, at the hearing on Hatchett's motion to withdraw his guilty plea, Hatchett admitted that he understood that he was pleading guilty to Counts I and II. (R.35 at 25.) Hatchett's prior attorney testified that he went over the plea agreement with Hatchett the morning of the plea and that Hatchett did not express any concern regarding the counts to which he was pleading guilty. Id. at 48. Considering the written plea agreement, and the testimony at both the guilty plea hearing and the hearing on Hatchett's motion to withdraw, the district court's finding that Hatchett fully understood the nature of the charges he was pleading guilty to was not clearly erroneous.
 
 
 15
 Hatchett next claims that his guilty plea was not voluntary because counsel (Shadid) failed to provide effective assistance. In order to successfully challenge a guilty plea on a claim of ineffective assistance of counsel, a defendant must demonstrate "that his attorney's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that but for his attorney's unprofessional errors, the results of the proceeding would have been different." United States v. Henry, 933 F.2d 553, 561 (7th Cir. 1991), cert. denied, 503 U.S. 997 (1992). The defendant must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ...." Strickland v. Washington, 466 U.S. 668, 689 (1984).
 
 
 16
 Hatchett first argues that Shadid was ineffective because he repeatedly encouraged Hatchett to plead guilty, he had limited contact with Hatchett, and he discussed the plea agreement only briefly with Hatchett. Shadid was not ineffective on these grounds.
 
 
 17
 Shadid did not force Hatchett to plead guilty. Although he encouraged Hatchett to plead guilty, Shadid informed Hatchett that he was ready to go to trial if Hatchett wanted. (R.35 at 46.) Moreover, Shadid's advice that Hatchett plead guilty was objectively reasonable. First, the government's evidence against Hatchett was substantial. Officers from the Peoria police department executed a search warrant on Hatchett's apartment at 411 South Western Avenue in Peoria, Illinois, where he was found asleep in the bedroom. The officers found over 20 grams of crack cocaine in the bedroom and a loaded Harrington and Richardson model 732 six-shot .32 caliber revolver in the bed where Hatchett had been sleeping. In addition, by pleading guilty, Hatchett may have avoided a more severe sentence. If Hatchett had been found guilty at trial, he would not have received a three-level reduction for acceptance of responsibility, U.S.S.G. Sec. 3E1.1(b)(2). Hence, with a criminal history category of V and total offense level of 28 (instead of 25), his applicable offense level on Count I would have been 130-162 months' imprisonment.
 
 
 18
 The record also demonstrates that Shadid frequently discussed the case with Hatchett and, when Hatchett decided to plead guilty, Shadid ensured that Hatchett fully understood the terms of the plea agreement. At the hearing on Hatchett's motion to withdraw his guilty plea, Shadid testified that he had three personal meetings and four or five telephone conversations with Hatchett. (R.35 at 31-35.) Shadid stated that he discussed the facts of the government's case with Hatchett and the various defenses that might be available to Hatchett. Id. at 35-36. In addition, Shadid subpoenaed potential witnesses in preparation of Hatchett's defense. Id. at 35. Regarding Shadid's review of the plea agreement with Hatchett, Shadid testified that he went over the plea agreement with Hatchett before he signed it, and that he believed Hatchett fully understood the terms of the agreement. Id. at 39. Shadid then stated that he never had any reason to believe that Hatchett was unhappy with his representation. Id. at 40. Indeed, both in his plea agreement, and at the plea hearing, Hatchett stated that he was satisfied with his counsel's performance. (R.10 at 9), (R.16 at 6.) Clearly, Shadid's representation did not fall below an "objective standard of reasonableness."
 
 
 19
 Hatchett also claims that counsel was ineffective for representing another individual who provided the government with information that could incriminate Hatchett in criminal activity. When a claim of ineffective assistance of counsel challenging a guilty plea is predicated upon a conflict of interest, prejudice is presumed if "the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance."' Strickland, 466 U.S. at 692.
 
 
 20
 Hatchett argues that Shadid's representation of another defendant (Aaron Kelly) in an unrelated case, conflicted with Shadid's representation of Hatchett. At the hearing on Hatchett's motion to withdraw, Hatchett claimed that Shadid met with both Hatchett and Kelly at the Peoria County jail, prior to Hatchett's plea of guilty, on two separate occasions. (R.35 at 6-7.) Hatchett stated that he discussed his entire case in front of Kelly and that Kelly thereafter supplied information to the government about his drug dealing. Id. at 13-14.
 
 
 21
 This potential conflict was brought to the court's attention at the beginning of the guilty plea hearing. At the start of the hearing, the government informed the district court that Shadid was representing another defendant, Kelly, in an unrelated proceeding. (R.16 at 2.) The government stated that Kelly had provided the government with information concerning Hatchett. Id. The government then stated that it had obtained the same information from other sources. Id. Moreover, the government provided that it would not use this information against Hatchett. Id. Shadid then stated that he had previously discussed this potential conflict with Hatchett. Id. at 3. Hatchett was informed of this potential conflict and stated that it did not concern him. Id. at 4.
 
 
 22
 At the hearing on Hatchett's motion to withdraw the guilty plea, the government reiterated that it would not use information obtained from Kelly against Hatchett. (R.35 at 21.) FBI Special Agent Greg Spencer testified that the information supplied to the government by Kelly consisted of a statement made by Kelly that "Mr. Hatchett was a Vice Lord [a gang member], but that he did not have any ranking or stars." Id. at 28. Shadid testified that he met with both Kelly and Hatchett on only one occasion. Id. at 33. Shadid stated that Hatchett did not discuss his involvement with drugs in front of Kelly and that Hatchett did not say anything that Kelly could later use as bargaining information in Kelly's case. Id. at 33.
 
 
 23
 As previously stated, "[t]he district court's findings regarding whether the defendant has 'fair and just' reasons for withdrawal [of a guilty plea] will be upheld unless they are clearly erroneous." Messino, 55 F.3d at 1247. The district court's finding that there was no conflict of interest was not clearly erroneous. First, Shadid's representation of Kelly was not related to his representation of Hatchett - he represented them in separate criminal proceedings. Moreover, Shadid testified that Hatchett did not discuss his case in the presence of Kelly. The district court was entitled to credit this testimony. Finally, the information provided by Kelly regarding Hatchett (which indicated only that Hatchett was a gang member) was not used against him. Based on the testimony elicited at the plea hearing and the hearing on Hatchett's motion to withdraw, the district court properly found that there was no conflict of interest.
 
 
 24
 Hatchett next claims that his plea was not voluntary since he was under extreme stress and had an "unstable mental condition" as a result of problems with other inmates at the Peoria County Jail, and that he thought that by pleading guilty, he would be transferred out of the Peoria County Jail. The government argues that Hatchett has forfeited this claim by failing to raise it before the district court.
 
 
 25
 Hatchett failed to mention any claim of his alleged unstable mental condition or his desire to plead guilty to get transferred out of the Peoria County Jail in either his motion to withdraw his guilty plea or his memorandum of law in support of his motion. Moreover, Hatchett made only two "fleeting" references to such a claim at the hearing on his motion to withdraw - Hatchett stated that he had been having trouble with inmates in the Peoria County Jail, (R.35 at 4-5, 26), and that he was told that the only way he could be transferred was to be found guilty or to plead out, id. at 26. We agree with the government that since this claim was not presented to the district court as a basis for withdrawal of Hatchett's guilty plea, it has been forfeited. United States v. Phillips, 37 F.3d 1210, 1215 (7th Cir. 1994). However, a conviction obtained by way of an invalid guilty plea affects a defendant's substantial rights and, therefore, it must be reviewed for plain error. Id. "'A reversal on the basis of plain error can be justified only when the reviewing court is convinced that it is necessary in order to avert an actual miscarriage of justice."' Id. (quoting United States v. D'Iguillont, 979 F.2d 612, 614 (7th Cir. 1992), cert. denied, 113 S. Ct. 1873 (1993)).
 
 
 26
 There is no plain error here. At the plea hearing, Hatchett was asked whether he had ever been treated for any mental illness. (R.16 at 5.) Hatchett stated that he had not. Id. at 6. Although Hatchett did indicate that he had previously suffered an addiction to narcotics, he stated that it would not affect his ability to understand the guilty plea proceedings. Id. at 6. Hatchett then stated that he was not under the influence of any drugs, medication or alcohol. Id. at 6. There was nothing in the guilty plea proceedings indicating that Hatchett had an "unstable mental condition." Moreover, in the written plea agreement, Hatchett acknowledged that no promises or commitments had been reached to influence him to plead guilty and that no agreements had been made, other than those stated in the plea agreement itself. (R.10 at 8.) At the plea hearing, Hatchett testified that he was satisfied with Shadid's representation, (R.16 at 6), and there were no promises outside of the plea agreement which might have induced him to plead guilty, id. at 11-12. At no point in the guilty plea proceedings did Hatchett ever mention that he was pleading guilty because he wanted to be removed from the Peoria County Jail. Clearly, the district court's finding that Hatchett's plea was voluntary was not in error.
 
 SENTENCING
 
 27
 Hatchett next claims that the sentencing provisions of 21 U.S.C. Sec. 841(b) and the Drug Quantity and Drug Equivalency Tables in U.S.S.G. Sec. 2D1.1(c) violate the Equal Protection Clause of the Fifth Amendment. Specifically, Hatchett argues that these provisions unconstitutionally provide the same penalty for both five grams of crack cocaine and 500 grams of cocaine powder. Hatchett claims that since crack cocaine is not more potent or addictive than cocaine powder, and it does not result in more violence than cocaine powder, there is no rational government interest in creating a greater penalty for possession with intent to distribute crack cocaine.
 
 
 28
 21 U.S.C. Sec. 841(b)(I)(B)(ii)(II) and (iii) provides, in pertinent part:
 
 
 29
 (B) In the case of a violation of subsection (a) of this section involving-
 
 
 30
 * * *
 
 
 31
 * * *
 
 
 32
 (ii) 500 grams or more of a mixture or substance containing a detectable amount of-
 
 
 33
 * * *
 
 
 34
 * * *
 
 
 35
 (II) cocaine, its salts, optical and geometric isomers, and salts of isomers; [or]
 
 
 36
 * * *
 
 
 37
 * * *
 
 
 38
 (iii) 5 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;
 
 
 39
 * * *
 
 
 40
 * * *
 
 
 41
 such person shall be sentenced to a term of imprisonment which may not be less than 5 years .... If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years ....
 
 
 42
 Although Sec. 841(b) does not define cocaine base, the Sentencing Commission has defined it as follows:
 
 
 43
 "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form."
 
 
 44
 U.S.S.G. Sec. 2D1.1(c). The Seventh Circuit has considered crack cocaine to be "cocaine base" for the purposes of application of Sec. 841(b). See United States v. Smith, 34 F.3d 514 (7th Cir. 1994); United States v. Lawrence, 951 F.2d 751 (7th Cir. 1991).
 
 
 45
 Since Hatchett pleaded guilty to possession with intent to distribute over 5 grams of crack cocaine and he had a prior felony drug conviction, he was subject to the 120-month mandatory minimum sentence under Sec. 841(b)(I)(B)(iii). The presentence investigation report provided that Hatchett was in possession of 23.3 grams of crack cocaine, so his base offense level under Sec. 2D1.1(c) was 28. Hatchett received a three-level reduction in his base offense level for acceptance of responsibility, U.S.S.G. Sec. 3E1.1(b)(2), and with a criminal history category of V, his applicable guidelines range was 100-125 months' imprisonment. Hatchett was sentenced to the mandatory minimum of 120 months' imprisonment on Count I. Had Hatchett been in possession of the same amount of cocaine powder (23.3 grams), he would not have been subject to the mandatory minimum under Sec. 841(b) and his base offense level under Sec. 2D1.1(c) would have been 12 instead of 28. With a two-level decrease for acceptance of responsibility, Hatchett would have had a total offense level of 10.[1] With a criminal history category of V, Hatchett's applicable guideline range would have been 21-27 months' imprisonment. There is no doubt that Hatchett's possession of crack cocaine resulted in a punishment much more severe than if he had been in possession of the same amount of cocaine powder.
 
 
 46
 Nonetheless, in United States v. Lawrence, 951 F.2d 751, this court was faced with the same constitutional challenge to both Sec. 841(b) and the accompanying Drug Quantity and Drug Equivalency Tables in Sec. 2D1.1(c). We upheld the constitutionality of these sentencing provisions:
 
 
 47
 We reject the defendant's claims and join those circuits holding that Congress' enactment of different penalties for cocaine base [crack] and cocaine evinces a rational purpose and does not violate the Due Process clause. Drug abuse is a cancer that threatens society, particularly in the form of increased criminal activity. The highly addictive nature of crack, its growing availability, and relatively low cost all serve to increase the risks associated with its use. Congress in its wisdom has chosen to combat the devastating effects of crack cocaine on our society, and we believe the disproportionate sentencing scheme that treats one gram of cocaine base the same as 100 grams of cocaine is rationally related to this purpose.
 
 
 48
 Lawrence, 951 F.2d at 755 (citing United States v. Cyrus, 890 F.2d 1245, 1248 (D.C.Cir.1989)). This reasoning was followed in United States v. Chandler, 996 F.2d 917 (7th Cir. 1993) and United States v. Jones, 54 F.3d 1285 (7th Cir. 1995).
 
 
 49
 Hatchett urges us to overturn Lawrence and its progeny for two reasons: (1) the Northern District of Georgia's decision in United States v. Davis, 864 F. Supp. 1303 (N.D.Ga. 1994); and (2) his claim that the United States Sentencing Commission recently voted to amend the Sentencing Guidelines so that there is no sentencing disparity between offenses involving crack cocaine and cocaine powder.
 
 
 50
 In Davis, the Northern District of Georgia held that there was no rational basis for different penalties for cocaine and crack cocaine. The Davis court provided that "it is clear beyond doubt that all forms of cocaine are equally smokeable and, therefore, equally dangerous" and that crack cocaine is not the only form of cocaine abused in the United States. Davis, 864 F. Supp. at 1309. Accordingly, the Davis court decided to ignore Sec. 841(b)'s penalty provisions for cocaine base and consider crack cocaine "cocaine" under Sec. 841(b). Davis, 864 F. Supp. at 1306. In Lawrence, the Seventh Circuit held to the contrary, finding crack cocaine to be more dangerous than other forms of cocaine and upholding the constitutionality of both Sec. 841(b) and Sec. 2D1.1(c). Lawrence, 951 F.2d at 755. Since Hatchett presents no basis for this court to reconsider that finding, we are constrained by the doctrines of stare decisis and precedent to adhere to our decision in Lawrence.
 
 
 51
 As Hatchett correctly points out, the Sentencing Commission has proposed to amend the penalty provisions of the Guidelines to eliminate all sentencing disparity between crack cocaine and powder cocaine. See Guideline Amendments Presented to Congress, Guide Lines (United States Sentencing Commission, Washington, D.C.), June, 1995, at 1-2. We note, however, that the Department of Justice opposes these recommended amendments. See id. at 2. In any event, despite these proposed amendments, the current versions of Sec. 841(b) and Sec. 2D1.1(c) remain applicable to Hatchett.
 
 
 52
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Since his base offense level would have been less than 16, Hatchett would only have received a two-level reduction for acceptance of responsibility, U.S.S.G. Sec. 3E1.1(a)