**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Joe MACKER and Walter Flansburg,**
**Defendants-Appellants.**

**No. 78–5316.**

United States Court of Appeals,
Fifth Circuit.

Dec. 14, 1979.

Rehearing Denied Jan. 14, 1980.

Donald L. Ferguson, Miami, Fla., for Macker.

Thomas F. Almon, Miami, Fla., for Flansburg.

Michael P. Sullivan, Stephen B. Gillman, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before GEWIN, AINSWORTH and REAVLEY, Circuit Judges.

AINSWORTH, Circuit Judge:

In this narcotics prosecution defendants-appellants Joe Macker and Walter Flansburg, along with codefendants Howard White and Robert Anthony Mineo, were charged in a six-count indictment filed in the United States District Court for the Southern District of Florida as follows: Count I charged all four defendants with conspiracy to distribute and possess cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; Counts II and III charged Macker and White with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count IV charged Macker, Flansburg and Mineo with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count V charged Macker and Flansburg with distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count VI charged Macker with unlawful possession and carriage of a firearm during the commission of a felony in violation of 18 U.S.C. § 924(c). During trial appellant Macker moved to dismiss Count VI. The motion was unopposed and granted, and the .38 caliber revolver found on Macker's person at the time of his arrest was not admitted into evidence.

Appellants Macker and Flansburg were tried jointly before a jury. During the course of the proceedings both defendants moved for a mistrial based on the Government's references to the gun during its case in chief. These motions were denied as were the defendants' motions for judgments of acquittal at the close of the Government's case and at the close of all of the evidence. Macker again moved for a mistrial following Flansburg's closing argument asserting prejudice as a result of alleged indirect references by Flansburg's counsel of Macker's failure to testify. The motion was denied. Macker was convicted on all five counts. Flansburg was found guilty of conspiracy to distribute and possess cocaine as charged in Count I and was acquitted of distribution of cocaine as charged in Counts IV and V. Both defendants have appealed.

Both appellants contend on appeal that the trial court committed reversible error in denying their motions for a mistrial based on the Government's references to the weapon during trial. Appellant Macker also argues that his motion for a mistrial should have been granted because of alleged prejudicial statements of Flansburg's counsel during closing argument, which, he contends, indirectly referred to Macker's failure to testify. Appellant Flansburg additionally contends that the Government produced insufficient evidence to support his conviction of conspiracy to possess with intent to distribute cocaine; also that the

evidence showed the existence of multiple conspiracies, rather than a single conspiracy as charged in the indictment. For reasons below, we reject appellants' contentions and affirm their convictions.

Viewing the evidence in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the facts indicate that appellant Macker conspired with appellant Flansburg and others to sell various quantities of cocaine to Drug Enforcement Administration (DEA) Agent Richard A. Fiano. These sales took place after DEA confidential informant Marjorie Grinstead arranged telephone conversations and an eventual meeting between Agent Fiano and Macker. According to the testimony of Agent Fiano, on June 14, 1977, Fiano spoke to Macker on the telephone and negotiated the purchase of three ounces of cocaine. The following day Fiano and Grinstead went to Macker's residence to complete the first purchase. Arriving at approximately 1:40 p. m., they were admitted into the house by Robert McCall and eventually escorted into a room where they were introduced to Macker and codefendant Howard White. Laying on a desk in the room near Macker was a clear plastic bag containing white powder, which was later tested positively for cocaine, and next to it was a .38 caliber blue-steel revolver. Fiano and White weighed the bag on the desk for approximately 37 grams for which Fiano paid Macker $1,875. At this time Fiano and Macker discussed the purchase of two and one-half additional ounces of cocaine at a price of $1,450 an ounce.

Later that day Fiano had a telephone conversation with Macker and returned to the latter's house. As he was waiting inside, White arrived carrying a brown paper bag containing another clear plastic bag of white powder, which also tested positively for cocaine. Macker showed them into another room where Fiano paid him $2,900 for the bag of cocaine. They then discussed a third purchase of one pound of cocaine.

On June 20, 1977, Fiano once again spoke to Macker on the telephone concerning their third cocaine deal. It was not until July 12, however, that the sale actually took place. That evening at approximately 9 p. m. Fiano arrived at Macker's house. A few minutes later appellant Walter Flansburg arrived. Fiano then followed Flansburg to Macker's office. Macker met them at the door and escorted them inside where Fiano was introduced to codefendant Robert Mineo. On the desk top was a clear plastic bag containing a white substance. Fiano stated he had to go to his car to get his field test kit in order to test the cocaine, so he and Macker walked to the car to retrieve the kit. After returning Fiano began to test the white substance. Throughout this process Flansburg questioned Fiano concerning the testing procedure until instructed by Macker to leave Fiano alone. Flansburg then left the room, but was told by Macker to return so as not to attract attention if a police "radio car" passed. Flansburg reentered the room, but was promptly sent by Macker to purchase some Clorox which Fiano had requested to complete his testing. Flansburg returned with the Clorox and Fiano performed a test on the white powder which was positive for cocaine. Fiano then purchased the cocaine for $7,000. Prior to departing, Fiano discussed with Macker the possibility of buying pound quantities of cocaine. Mineo informed him that the price would be $19,000-$20,000. As Fiano was leaving, he observed Flansburg wipe up some cocaine residue from the table with his finger and place it to his nose and snort it.

Between July 28 and August 4, Agent Fiano had several telephone conversations with Macker, many of which were tape recorded and played to the jury. On August 4, Fiano met Macker at his residence. Flansburg was present when he arrived. Macker and Fiano went outside to discuss the purchase of 10–11 pounds of cocaine. Fiano left after agreeing to be in touch with Macker later. Several telephone calls were placed by Fiano to Macker between August 5 and August 11 concerning the deal.

On August 11, 1977, Fiano went to Macker's residence but was told to leave and call later since Macker's "people" had not arrived. After speaking to Macker on the telephone, Fiano returned to Macker's house and was escorted by Macker into the room where the earlier transactions had taken place. Flansburg was present at this time. Macker produced a white box with the name "Jordan Marsh" printed on it, containing 11 plastic bags, each filled with a white powder. Fiano stated he wanted more than 11 bags, so after Macker placed a telephone call, plans were made for Fiano to return the next day to make the purchase.

Fiano returned to Macker's residence on August 12. Again Flansburg was present. Macker told Flansburg to go into the drawer and get the "Jordan Marsh" box. Flansburg did so and handed it to Macker, who placed it on the desk and opened it. It contained 11 clear plastic bags of a white substance. Fiano then told Macker he had to go to his car to get the money and his test kit. Fiano walked outside and alerted other DEA surveillance agents who returned with Fiano and placed Macker under arrest. At this time Fiano took a .38 caliber Colt revolver from inside Macker's waistband. Flansburg was also arrested outside of the house on the sidewalk.

■ As noted earlier, at the close of the Government's case, Count VI of the indictment charging Macker with unlawful possession of a firearm was dismissed and the gun was held inadmissible. Following dismissal of the charge, the court instructed the jury to disregard any references to the weapon and advised them that the Government had dismissed the count. Earlier in the trial appellant Macker had objected to the Government's first reference to the gun and the objection was sustained. The court at that time instructed the jury to disregard any references made to the weapon. Neither defendant objected to any other testimony regarding the gun.

Macker now contends that the trial court erred in denying his motion for a mistrial based on references to the gun. In response to this argument we note that the fact that the charge was later dismissed does not in itself make the Government's earlier references to the gun improper. Although Florida law does not require a permit to carry a firearm in one's own home, Fla.Stat.Ann. § 790.25(3)(n), it is clearly illegal in that state as well as under federal law to carry a concealed firearm during an unlawful narcotics sale. *United States v. Bower*, 5 Cir., 575 F.2d 499, 502, *cert. denied*, 439 U.S. 983, 99 S.Ct. 572, 58 L.Ed.2d 654 (1978); *see* Fla.Stat.Ann. § 790.07(2); 18 U.S.C. § 924(c)(2). Therefore, there was no error committed in the court's denial of Macker's motions for a mistrial, particularly in light of the court's curative instructions.

■ Macker's second contention is wholly without merit. He argues that the court erroneously denied his motion for a mistrial based on prejudice resulting from statements of Flansburg's counsel during closing argument, which, he alleges, indirectly referred to Macker's failure to testify. Although it may be improper and prejudicial for a codefendant's attorney to comment on a defendant's failure to testify, *DeLuna v. United States*, 5 Cir., 1962, 308 F.2d 140, 154, the remarks Macker complains of here are "so oblique that they cannot be deemed suggestive of [the defendant's] failure to take the stand." *United States v. Driscoll*, 5 Cir., 1972, 454 F.2d 792, 801. The allegedly prejudicial comments include a statement by Flansburg's attorney that "[h]e [Flansburg] was here to testify and you [the jury] are here to decide." Later counsel argued: "However, I am not surprised at Mr. Flansburg. He stood up. He has put himself before you in order for you to make a decision . . . . He specifically got on the stand and told you about it [purchasing the Clorox]." Finally Flansburg's attorney stated that his client "wasn't afraid to take the stand in front of you."

In order for such remarks to constitute reversible error on the grounds of improper comment on an accused's failure to testify, we must find that (1) it was the attorney's manifest intention to refer to defendant's silence, or (2) the remark "was 'of such a

character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' " *United States v. Corral-Martinez,* 5 Cir., 1979, 592 F.2d 263, 269, *quoting United States v. White,* 5 Cir., 444 F.2d 1274, 1278, *cert. denied,* 404 U.S. 949, 92 S.Ct. 300, 30 L.Ed.2d 266 (1971); *United States v. Chandler,* 5 Cir., 1978, 586 F.2d 593, 603, *cert. denied,* 440 U.S. 927, 99 S.Ct. 1262, 59 L.Ed.2d 483 (1979); *United States v. Rochan,* 5 Cir., 1977, 563 F.2d 1246, 1249–50. The comments need not be direct in order to be improper. *United States v. Chandler, supra,* 586 F.2d at 603.

It is difficult to find any prejudice to appellant Macker in the remarks made by Flansburg's counsel. It can hardly be said that the remarks were manifestly intended to refer to Macker's failure to testify. The more plausible explanation, considering the fact that Flansburg did take the stand, is that the statements were intended to bolster Flansburg's story and enhance his credibility. *See United States v. Diecidue,* 5 Cir., 1979, 603 F.2d 535, 552–53. Nor has Macker shown that the jury should necessarily have construed the remark as a comment on his silence. Macker's name was never mentioned during counsel's argument, and the statements were "unexceptional, lacking in aggravation and emphasis." *United States v. Chandler, supra,* 586 F.2d at 605. Further, any potential impropriety resulting from the remarks was cured by the court's instruction that no inferences may be drawn from a defendant's failure to testify and by the overwhelming evidence of Macker's involvement in the conspiracy. *See United States v. Chandler, supra,* 586 F.2d at 604–05. We therefore find that the court's denial of Macker's motion for a mistrial did not constitute error.

■ We now consider appellant Flansburg's contentions on appeal. Like Macker, Flansburg argues that the trial court erred in denying his motion for a mistrial due to the Government's references to the gun during its presentation of evidence. We note that appellant has failed to demonstrate any prejudice to himself as a result of these references. All testimony regarding the weapon referred solely to Macker. There was no evidence connecting Flansburg with the revolver. Furthermore, the trial court's instructions to the jury to consider each defendant's case separately, as well as its curative instructions regarding the gun, were sufficient to remedy any spillover effect which may have prejudiced Flansburg. *See United States v. Avarello,* 5 Cir., 1979, 592 F.2d 1339, 1345–46. Therefore, the court's denial of Flansburg's motion for a mistrial was not improper.

■ Flansburg next challenges the sufficiency of the evidence to support his conspiracy conviction. In our view there was presented at trial substantial evidence to establish beyond a reasonable doubt that a conspiracy existed and that Flansburg had the requisite knowledge and intent to join that conspiracy. The Government thus met its burden in proving all the elements necessary to support the conspiracy conviction. *See United States v. Carter,* 5 Cir., 1979, 603 F.2d 1204, 1207; *United States v. Malatesta,* 5 Cir., 590 F.2d 1379, 1381, *cert. denied,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979); *United States v. Soto,* 5 Cir., 591 F.2d 1091, 1101, *cert. denied,* —— U.S. ——, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979); *United States v. Michel,* 5 Cir., 1979, 588 F.2d 986, 994. Although we note that mere presence, association, acquiescence, or approval without more is not sufficient to establish that a defendant is a member of a conspiracy, *United States v. Rodriquez,* 5 Cir., 1978, 585 F.2d 1234, 1245, we also point out that under 21 U.S.C. § 846, no overt act is required for conviction of conspiracy to possess and distribute cocaine. *See United States v. Carter, supra,* 603 F.2d at 1207.

Appellant Flansburg does not challenge the existence of a conspiracy, and the evidence adduced at trial regarding the conspiracy is overwhelming and largely uncontroverted. Moreover, Flansburg's knowledge of the conspiracy and his participation in it were firmly established by the Government. Flansburg was present on at least three different occasions where either the

subject of the purchase of cocaine was discussed or an actual transaction took place. Furthermore, he participated in at least two drug sales in furtherance of the conspiracy. During the July 12 sale, while Fiano was field testing the cocaine, Flansburg's continual questioning of Fiano concerning his procedures clearly supports a finding of Flansburg's knowledge of the conspiracy. Flansburg's snorting of the cocaine residue as Fiano was leaving Macker's residence that day, though not an act in furtherance of the conspiracy, is further proof of an inference of knowledge. Additionally, on July 12, Flansburg met Fiano at Macker's house and led him to Macker's office where the drug sale took place. Later that evening, Flansburg purchased some Clorox for Fiano so that he could complete his field test on the substance. During the August 12 transaction, Flansburg, at Macker's request, procured the "Jordan Marsh" box containing 11 bags of cocaine. The box was opened and the contents revealed in Flansburg's presence. Thus, the Government's proof was clearly sufficient to show beyond any reasonable doubt that a conspiracy existed, Flansburg knew of its existence, and he voluntarily and knowingly joined in it.

Flansburg's final contention, that there were multiple conspiracies rather than a single conspiracy as charged, must be rejected. Since this is primarily a question of fact to be determined by the jury, *United States v. Rodriquez,* 5 Cir., 1975, 509 F.2d 1342, 1348, our review is limited to determining whether the evidence is sufficient to sustain the jury's finding. *United States v. Malatesta, supra,* 590 F.2d at 1382. As noted earlier, the existence of a conspiracy is unquestioned. The conclusion that the activities here constituted a single conspiracy rather than several conspiracies is also clearly supported by the evidence. It is only necessary to show that Flansburg knew of the conspiracy and associated himself with it. He need not have been aware of each part of the unlawful plan. *United States v. Rodriquez, supra,* 509 F.2d at 1348. Further, it is irrelevant that some members of the group were cast in more vital roles than others. *United States v. Becker,* 5 Cir., 569 F.2d 951, 959, *cert. denied,* 439 U.S. 865, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978). Although Flansburg's participation arguably was limited to only two actual drug transactions, to contend that each sale was a "random, separate venture discrete from the others" is plainly unreasonable. *United States v. Michel, supra,* 588 F.2d at 995. The continuous communication between Macker and Fiano over a period of only a few weeks clearly supports a finding that there was only one overall agreement with a single common unlawful purpose. The Government's proof, therefore, is sufficient to support the jury verdict reflecting a single conspiracy.

AFFIRMED.