**UNITED STATES of America, Appellee,**

v.

**Allen Scott JACKSON, Appellant.**

**No. 94–3718.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1995.

Decided Sept. 5, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 12, 1995.

Alfredo Parrish, Des Moines, IA, argued, for appellant.

Jamie D. Bowers, Asst. U.S. Atty., Des Moines, IA, argued, for appellee.

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Allen Scott Jackson appeals his convictions and sentence for conspiracy to distribute and possession with intent to distribute crack cocaine. He argues that (1) the evidence for conviction was insufficient as a matter of law, (2) the court erred in not severing his trial from that of co-defendant Michael Stokes, (3) Stokes's counsel improperly commented on Jackson's failure to testify, (4) 21 U.S.C. § 841 (1988), which imposes harsher sentences for "cocaine base" than for "cocaine," is ambiguous in its use of those terms, and he should benefit from the rule of lenity, and (5) the District Court [1] erred in applying the Sentencing Guidelines. We affirm.

**I.**

On April 1, 1994, a package was sent from Las Vegas, Nevada to Des Moines, Iowa, deliverable to a "Steve White." While the package label indicated that White lived at 2117 Kingman, the shipping order listed 2717 Kingman, No. 3, as the proper address. United Parcel Service (UPS) attempted to deliver to the first address, only to find that it did not exist. Using standard operating procedures, UPS staff opened the package in search of a proper address only to find that it contained a duct-taped ball of what appeared to be contraband drugs, specifically crack cocaine. The police were notified, and after determining that crack cocaine was apparently involved and that 2717 Kingman was the intended destination, a search warrant was obtained for Apartment 3 at that address. The package, with the addition of a beeper, was rewrapped. Law enforcement officials posing as UPS workers then delivered the shipment. At the door of the apartment, Michael Stokes identified himself as Steve White, and signed for the package in that name. The residence was kept under surveillance and about two hours later, when the beeper indicated that the package had been opened, the police approached the house and entered the apartment, pursuant to their warrant. At that time both Stokes and Jackson were found to be present. Officer Tad Cobine, who looked into the apartment through an opening in the window-shades, testified that he saw Jackson standing facing the counter on which the package that had contained the crack cocaine subsequently was found. When the apartment door was forced, Cobine observed Jackson run toward the area of a back door and kitchen closet, in which a duct-taped ball of crack was recovered. In a subsequent statement, paralleled by his testimony at trial, Stokes said that the package had been delivered to his apartment at Jackson's request, that Jackson had told him it would contain money that Jackson did not want his wife to know about, and that Jackson had agreed to pay Stokes $100 to receive the package. According to Stokes, he did not unwrap the package when it arrived, but contacted Jackson, who came by the apartment and opened the parcel.

Jackson and Stokes were charged with one count of conspiring to distribute crack cocaine, a violation of 21 U.S.C. § 846 (1988), and with one count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (1988).

---

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

Testimony at trial showed that telephone toll records from Jackson's place of employment and his home involved calls to the same Las Vegas number as that phoned by Stokes on several occasions. Stokes elected to testify; Jackson did not. Analysis of the substance found in the package established that it was 163.17 grams of crack cocaine. The jury returned a verdict acquitting Stokes, but finding Jackson guilty on both counts.

At his sentencing hearing, Jackson offered transcripts of the testimony of three witnesses, Warren James Woodford, Dr. Clinton D. Kilts, and Dr. John Marshall Holbrook, who testified in *United States v. Davis*, 864 F.Supp. 1303 (N.D.Ga.1994), *appeal pending* (No. 95–8057 11th Cir.), to support his argument that cocaine base and cocaine are the same substance. *See* Brief of Defendant–Appellant at 3. This testimony, however, was at best equivocal. In answer to a question as to whether "the use of crack cocaine as you've described it [was] more dangerous to the individual than the use of cocaine hydrochloride or cocaine base?"; Woodford replied with a simple "Yes." Exhibit E, 1 Motions Tr. at 11. He later stated that cocaine base was distinguishable from cocaine hydrochloride in molecular weight and structure, melting point, solubility, and common method of ingestion. *Id.* at 43–46. Dr. Kilts discussed the distinct pharmacology of cocaine free base, including a low boiling point and a rapid effect on users, *id.* 63–64, while Dr. Holbrook noted that cocaine base is the only form of the drug which is truly smokeable. *Id.* 118. Additionally, Peter Poole, a forensic chemist at the DEA laboratory, stated that cocaine base differs from other forms of the drug, including cocaine hydrochloride, in that it has a different melting point, is soluble in different solvents, absorbs infrared light at a different frequency, and has a separate chemical abstract service registry number and noted that it vaporizes at a lower temperature than cocaine hydrochloride, and thus is more readily smokeable. *See* Sentencing Hearing Transcript at 32–36. Dr. Michael J. Moskal, Director of Pediatrics at Broadlawns County Hospital in Des Moines, testified as to his research on inhalation of "second hand" crack cocaine smoke by children and infants.

The District Court, rejecting Jackson's argument that because of ambiguity in § 841's use of the terms "cocaine base" and "cocaine" he should have the benefit of the rule of lenity (and thus be spared the more severe punishment applicable to crack cocaine offenses), sentenced him to a term of 240 months.

## II.

■ Jackson's first argument on appeal is that the evidence is insufficient as a matter of law to convict him of conspiring to distribute crack cocaine in violation of 21 U.S.C. § 846 (1988). We review the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences that support the jury verdict. *United States v. Marin–Cifuentes*, 866 F.2d 988, 992 (8th Cir.1989).

> To convict the defendants of conspiracy, the government must prove that they entered into an agreement and that agreement had as its objective a violation of the law. The agreement need not be express or final, however. The government must show no more than a tacit understanding among the participants. Because the nature of a drug conspiracy requires secrecy, the agreement must often be established by way of inference from the surrounding circumstances.

*United States v. Quintanilla*, 25 F.3d 694, 699 (8th Cir.) (citations omitted), *cert. denied sub nom. Velasquez v. United States*, —— U.S. ——, 115 S.Ct. 457, 130 L.Ed.2d 365 (1994).

■ Here, the government charged that Jackson had conspired not only with Stokes but also with an unknown individual in Las Vegas to distribute crack cocaine. Documentary evidence of telephone calls made by Jackson to a Las Vegas number were offered in evidence and Stokes, Jackson's co-defendant, testified that Jackson made phone calls to a Las Vegas telephone number from the apartment at Kingman. Trial Transcript at 318–19. As noted above, Stokes also testified that he had received the package at his residence at Jackson's request, that Jackson had agreed to pay him for this service, and that

when he called Jackson to let him know the package had arrived, Jackson came to the Kingman address and opened the package. *Id.* at 307–18. Testimony from Officer Cobine placed Jackson in close proximity to the package of cocaine and noted his furtive movements when police entered the house, Trial Transcript at 167–71, and a ball of crack cocaine was retrieved from the specific area of the apartment to which Jackson was seen to retreat, *see* Trial Transcript at 97. The quantity of the seized crack cocaine (163.17 grams) permits an inference that it was intended for further distribution, not for personal use. *See United States v. Turpin,* 920 F.2d 1377, 1383–84 (8th Cir.1990) (intent to distribute cocaine inferred from possession of over 150 grams of cocaine base), *cert. denied,* 499 U.S. 953, 111 S.Ct. 1428, 113 L.Ed.2d 480 (1991). We conclude that the evidence is sufficient to support the finding of the jury that beyond a reasonable doubt Jackson was a participant in a conspiracy to distribute crack cocaine.

## III.

■ Jackson next argues that the District Court erred in not severing his trial from that of Michael Stokes to avoid prejudice and insure that Jackson received a fair trial pursuant to the Fifth and Sixth Amendments of the Constitution. In *United States v. Wint,* 974 F.2d 961 (8th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1001, 122 L.Ed.2d 151 (1993), we noted that

> "[r]arely, if ever, will it be improper for co-conspirators to be tried together." The decision whether to grant severance is committed to the discretion of the district court and we will not reverse its decision absent a showing of clear prejudice which indicates an abuse of discretion. To show such prejudice, a defendant must establish something more than the mere fact that his chance for acquittal would have been better had he been tried separately. He must affirmatively demonstrate that the joint trial prejudiced his right to a fair trial.

*Id.* at 965–66 (citations omitted). A defendant "can show real prejudice either by showing that [his] defense is irreconcilable

with the defense of [his] codefendant or codefendants or that the jury will be unable to compartmentalize the evidence as it relates to separate defendants." *United States v. Gutberlet,* 939 F.2d 643, 645 (8th Cir.1991).

To convince us that the joint trial prejudiced his right to a fair trial, Jackson argues that his defense was irreconcilable with that of Stokes and that the jury was unable to compartmentalize the evidence as it related to him. We disagree.

We are satisfied that in the present case Jackson's and Stokes's defenses were not irreconcilable. As the government points out, Stokes testified (and the jury evidently believed) that he had no knowledge of what was in the package that contained the ball of crack cocaine. Jackson's position (as previously mentioned, he did not testify) was that the government failed to show guilty knowledge on his part, but the evidence permitted the jury to find otherwise and it did so. Although Stokes prevailed and Jackson did not, their *identical defenses*—"I didn't know what was in the package"—cannot rationally be found to be irreconcilable. Significantly, Stokes testified that Jackson arranged for the package to be sent to Stokes's apartment, but he did not testify that Jackson had advance knowledge that the package would contain contraband. Instead, Stokes's testimony was that Jackson had informed him the package would contain money.

We next consider the question of compartmentalization of the evidence. A claim of potential prejudice is not enough to prevail on this issue. *See United States v. Agofsky,* 20 F.3d 866, 871 (8th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 280, 130 L.Ed.2d 196 and — U.S. ——, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994). The District Court instructed the jury to view the cases of the co-defendants separately, and there is nothing to suggest that the jury did not do so. To the contrary, the split in the verdicts shows that the jury was indeed able to compartmentalize the evidence against each defendant.

Jackson has failed to show that he suffered any prejudice, much less clear prejudice, *see Wint,* 974 F.2d at 966, from the District

Court's denial of his severance motion. We therefore conclude that the court did not abuse its discretion in refusing to sever the trials of Jackson and Stokes.

## IV.

Jackson contends that a remark made by Stokes's counsel rose to the level of improper comment on Jackson's failure to testify. He complains that counsel for Stokes remarked upon his client's desire to take the stand and to "tell the truth" and further remarked "that Michael Stokes took a leap of faith by taking the stand that you (the jury) would be able to see and hear that *he* is telling the truth" and that "other witnesses had come forward to testify about the events that Stokes had said were true." Brief of Defendant–Appellant at 9. The brief cites to page 442 of the trial transcript, but the language complained of does not appear on this page. The government does not deny that the allegedly improper comments were in fact made. The government asserts, however, and Jackson does not deny, that "[t]he statements of defendant Stokes' attorney concerning Stokes' testimony were made in closing argument without objection from either the government or counsel for defendant, Jackson." Brief of Appellee at 13. The trial transcript does not contain the closing arguments. Because Jackson has conceded, at least implicitly, that no contemporaneous objection was made to the allegedly improper comments, our review of this issue is under the plain error standard. *See United States v. McBride*, 862 F.2d 1316 (8th Cir.1988).

In *Hayes v. United States*, 329 F.2d 209, 222 (8th Cir.), *cert. denied*, 377 U.S. 980, 84 S.Ct. 1883, 12 L.Ed.2d 748 (1964), we noted that "[a] trial judge has a large responsibility in assuring a fair trial to all parties.... Permitting comment upon the failure of a defendant to testify constitutes prejudicial error as to the non-testifying defendant." We must, however, consider whether the remarks in the present case do indeed constitute such prohibited comment. We conclude that they do not. In reaching this conclusion, we find persuasive the decision of the Fifth Circuit in *United States v. Macker*, 608 F.2d 223 (5th Cir.1979). In *Macker*, prejudice was argued based on statements made by a co-defendant's counsel during closing argument which allegedly indirectly referred to defendant's failure to testify. These included remarks that the co-defendant "was here to testify and you [the jury] are here to decide," that "[h]e has put himself before you in order for you to make a decision.... He specifically got on the stand and told you about it ..." and that his client "wasn't afraid to take the stand in front of you." *Id.* at 226.

In order for such remarks to constitute reversible error on the grounds of improper comment on an accused's failure to testify, we must find that (1) it was the attorney's manifest intention to refer to defendant's silence, or (2) the remark "was 'of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'" The comments need not be direct in order to be improper.

It is difficult to find any prejudice to appellant ... in the remarks made by [codefendant's] counsel. It can hardly be said that the remarks were manifestly intended to refer to [defendant's] failure to testify. The more plausible explanation, considering the fact that [the codefendant] did take the stand, is that the statements were intended to bolster [codefendant's] story and enhance his credibility. Nor has [defendant] shown that the jury should necessarily have construed the remark as a comment on his silence. [Defendant's] name was never mentioned during counsel's argument, and the statements were "unexceptional, lacking in aggravation and emphasis." Further, any potential impropriety resulting from the remarks was cured by the court's instruction that no inferences may be drawn from a defendant's failure to testify and by the overwhelming evidence of Macker's involvement in the conspiracy.

*Id.* at 226–27 (citations omitted). We find the reasoning of *Macker* fully applicable here. There is no indication that it was Stokes's counsel's manifest intention to refer to Jackson's silence and the remarks made

need not have been taken as comments on his failure to testify. We are comfortable with the interpretation that they were attempts to bolster Stokes's credibility, and we note that Jackson's name was not mentioned in connection with the remarks. The remarks are unexceptional and lacking in aggravation, and Jackson makes no showing that they were emphasized. Further, as in *Macker,* the District Court properly instructed the jury that no adverse inferences were to be drawn from Jackson's exercise of his right to remain silent. Finally, the government presented a strong case against Jackson. Viewing Stokes's counsel's comments in light of all the circumstances, we are not inclined to believe that the comments were improper, and we are certain that they did not amount to plain error.

## V.

■ Jackson's next argument is that the District Court erred in its determination that 21 U.S.C. § 841 (1988) is not ambiguous in distinguishing between "cocaine base" and "cocaine" for sentencing purposes. He asserts that the sentencing provisions in question "are void for vagueness and/or are inapplicable by operation of the rule of lenity because here are two statutory penalties for cocaine." Brief for Defendant–Appellant at 12.

> We have previously held that
> the term "cocaine base" is not so vague that it does not provide sufficient notice to individuals that the conduct they are engaging in is subject to criminal penalties. Several courts have held that despite the lack of an exacting definition of cocaine base in the statute, the term provides adequate notice to individuals and sufficiently limits governmental discretion so that it survives a constitutional attack premised on the void for vagueness doctrine.

*United States v. House,* 939 F.2d 659, 664 (8th Cir.1991). Jackson's vagueness argument thus is precluded by the established law of this circuit. Accordingly, we apply *House* and reject this argument without further discussion.

■ In the alternative, Jackson argues for application of the rule of lenity requiring imposition of a lesser penalty when ambiguity exists concerning the reach of a criminal statute or the penalties involved. *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). While we previously have noted this theory in connection with crack cocaine cases, *see United States v. Thompson,* 51 F.3d 122, 127 (8th Cir.1995); *United States v. Michael Shipley,* No. 95–1036, slip op. at 3, 1995 WL 442209 *1–2 (8th Cir. July 27, 1995), this is a case of first impression in our Circuit. The rule of lenity has been applied by a federal district court in the Eleventh Circuit in sentencing a defendant convicted of an offense involving cocaine base, *see Davis,* 864 F.Supp. at 1309,[2] but has been rejected by the Seventh Circuit in a similar case, *United States v. Blanding,* 53 F.3d 773, 776 (7th Cir.1995), and by the Fourth Circuit in two unpublished opinions.

From our Circuit's rejection of the void-for-vagueness argument, it is but a short step to the conclusion that Jackson's argument for application of the rule of lenity must also fail. It was clear to Congress, just as it always has been clear to cocaine traffickers and cocaine users, that there are important differences between cocaine and crack cocaine, the latter being the only form of cocaine base to which the stiffer penalties formulated by the Sentencing Guidelines apply. *See* U.S.S.G. § 2D1.1(c) (1993). These differences, according to the testimony of expert witnesses, include cost, method of production, availability to the urban poor, and the rapid "high" (and the consequent rapid addiction) produced by the use of crack cocaine. *See* Exhibit E, 1 Transcript of Motions at 43, 63, 67, 86, 116–17. Additionally, Peter Poole, a forensic chemist, testified as to differences between the physical and chemical properties

---

**2.** Although Jackson's brief does not cite to this decision, its argument directly tracks, and its language duplicates, large portions of the *Davis* opinion. *See United States v. Davis,* 864 F.Supp. 1303, 1305–09, *appeal pending* (No. 95–8057 11th Cir.); Brief of Defendant–Appellant at 12–

**18.** We separate the merits of the issues raised from the conduct of counsel, but we do express our disapproval of a style of brief-writing that appropriates both arguments and language without acknowledging their source.

of cocaine base and other forms of cocaine, while Dr. Michael J. Moskal gave testimony as to the harmful effects of "second hand" crack cocaine smoke on non-users, particularly on children. Sentencing Transcript at 73–79. Given these practical, real-world differences, we accord no significance to Jackson's argument that the transformation of cocaine into crack cocaine does not change the cocaine's molecular structure. Jackson has been convicted of drug trafficking offenses involving crack cocaine. He does not contend that he was unaware of the differences, or unable to distinguish, between crack and other forms of cocaine. We are in full accord with the Seventh Circuit that "Congress has defined the substance—and its intention to impose punishment befitting the crime—with appropriate clarity." *Blanding,* 53 F.3d at 776. We therefore conclude that Jackson's argument for application of the rule of lenity is without merit.

### VI.

 Finally, we consider Jackson's argument that the District Court erred in its application of the Sentencing Guidelines. Jackson contends that he should have been given only five criminal history points rather than the nine assigned. This would have resulted in a criminal history category of III, which meant his base offense level of eighteen would have yielded a guideline sentencing range of thirty-three to forty-one months. *See* Brief of Defendant–Appellant at 19. In fact, the District Court placed Jackson in criminal history category IV, resulting in a sentencing range of 210 to 262 months. However, he was convicted of conspiring to distribute crack cocaine and possession with intent to distribute. As both of these offenses involved more than 50 grams of crack, each carries a statutory mandatory minimum ten-year term of imprisonment. 21 U.S.C. § 841(b)(1)(A) (Supp.1994). Because of Jackson's previous conviction for a drug-related felony, the statutory mandatory minimum was enhanced to 20 years, or 240 months. *See id.* Jackson in fact was sentenced to two terms of 240 months, one on each count, to be served concurrently. A sentencing judge may not depart below the statutory minimum sentence without a government motion under 18 U.S.C. § 3553(e) (1988). *See United States v. Rodriguez–Morales,* 958 F.2d 1441 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 375, 121 L.Ed.2d 287 (1992). No such motion was made in the present case. The District Court therefore was required to impose, at the very least, the mandatory minimum sentence of 240 months, which it did. Because the sentence imposed by the District Court does not exceed the mandatory minimum sentence, the assignment of Jackson to criminal history category IV was of no consequence, and we therefore need not and do not consider the merits of Jackson's claim that he should have been placed in category III.

### VII.

Jackson's convictions and sentence are affirmed.