No. 95-3878

United States of America,  *
                         *
         Appellee,   *
                         *
      v.                 *
                         *
Marvin Herron, also known as   *
Spook,                 *
                         *
         Appellant.   *

No. 95-4146

United States of America,  *
                         *
         Appellee,   *  Appeals from the United States
                         *  District Court for the
      v.                 *  Western District of Missouri.
                         *
Robert L. McKinney, also   *
known as Dusharme Taylor,  *
also known as Clifton Paige,   *
                         *
         Appellant.   *

No. 95-4150

United States of America,  *
                         *
         Appellee,   *
                         *
      v.                 *
                         *
Charles Bell Estell, also   *
known as China,         *
                         *
         Appellant.   *

No. 95-4155

United States of America,  *
                            *
          Appellee,         *
      v.                    *
                            *
Danny K. Jarrett, also known *
as Dough-Boy,               *
                            *
          Appellant.        *


No. 95-4157

United States of America,  *
                            *
          Appellee,         *
      v.                    *
                            *
Rosalind D. Glover,         *
                            *
          Appellant.        *


No. 95-4173

United States of America,  *
                            *
          Appellee,         *
                            *
      v.                    *
                            *
Gene A. Nelson, also known  *
as Geno,                    *
                            *
          Appellant.        *


                  Submitted:  May 15, 1996

                  Filed:  October 1, 1996


Before BOWMAN, HEANEY, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

HEANEY, Circuit Judge.

Appellants Marvin Herron, Danny K. Jarrett, Rosalind D. Glover, Gene A. Nelson, Robert L. McKinney, and Charles Bell Estell challenge their convictions and sentences stemming from their participation in a drug-trafficking operation. Specifically, Herron and Jarrett argue that their convictions for conspiracy to launder money in violation of 18 U.S.C. § 1956 (1994) are not supported by the evidence. In light of Bailey v. United States, 116 S. Ct. 501 (1995), Herron also challenges the sufficiency of the evidence for his conviction under 18 U.S.C. § 924(c) (1994). Additionally, all six of the appellants argue that their sentences for their cocaine base-related convictions[1] cannot stand because of the 100:1 sentencing ratio between offenses involving cocaine base and those involving cocaine powder. We affirm in part and reverse in part.

I.

We address first Herron's and Jarrett's challenge to the sufficiency of the evidence for their money-laundering convictions. In reviewing the guilty verdicts, we view the evidence in the light most favorable to the government, giving the government the benefit of all reasonable inferences. United States v. Termini, 992 F.2d 879, 881 (8th Cir. 1993). We must affirm the appellants' convictions if we conclude that a reasonable jury could have found every element of the offense beyond a reasonable doubt. United States v. Simms, 18 F.3d 588, 592 (8th Cir. 1994).

---

[1]All but Glover were convicted of conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 846 (1994). Herron, Jarrett, and Nelson were also convicted of multiple counts of distribution of cocaine base and Herron, Jarrett, and Glover of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1994).

3

For a money-laundering conviction, the government has the burden of proving beyond a reasonable doubt that an individual knowingly conducted a financial transaction involving the proceeds from drug distribution and that they did so either (1) with the intent to promote their drug business, 18 U.S.C. § 1956(a)(1)(A)(i); or (2) with knowledge that the transaction was designed to disguise the nature or source of those proceeds, 18 U.S.C. § 1956(a)(1)(B)(i).  Although the appellants were indicted under both sections of the money-laundering statute, the district court instructed the jury only as to the concealment or disguise prong.[2]  Thus, we consider the sufficiency of the evidence for that offense only.

At trial, several government witnesses testified that Herron and Jarrett wire transferred money to the Chicago area from a store in Springfield, Missouri.  Records from Western Union Financial Services confirmed that Herron made transfers totalling over $5,000 and that Jarrett transferred over $7,000.  There was also evidence

---

[2]The jury was instructed, in relevant part, as follows:

One, the defendant conducted a financial transaction, that is wire transfer of funds or delivery of funds, which in any way or degree affected interstate or foreign commerce;

Two, the defendant conducted the financial transaction with money that involved the proceeds of unlawful distribution of cocaine base or "crack;"

Three, at the time the defendant conducted the financial transaction, the defendant knew the money represented the proceeds of some form of unlawful activity; and,

Four, the defendant conducted the financial transaction knowing that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the proceeds of unlawful distribution of cocaine base or "crack."

J. A. at 23.

4

that Herron and Jarrett made substantial amounts of money through their distribution of "crack" cocaine in the Springfield area and that they had no legitimate source of income. Moreover, an employee of the Criminal Investigation Division of the Internal Revenue Service testified that wire transfers are a method used by drug traffickers to conceal the nature, source, and location of their drug proceeds. Specifically, persons can conceal wire transfers through the use of false names. A Western Union employee further explained that persons sending money through Western Union do not have to show identification if they are sending less than $10,000 at a time and that they may waive identification of the receiver.

We review the sufficiency of each element of the offense in turn. There is no question that appellants wire transferred money through Western Union and that these transfers constitute "financial transactions" as defined by the statute. 18 U.S.C. § 1956(c)(4). The evidence also supports a finding that the money involved in the transactions represented proceeds from drug trafficking. To satisfy this element, the government need not trace proceeds from particular drug sales to the wire transfers. United States v. Blackmun, 904 F.2d 1250, 1256 (8th Cir. 1990). From the evidence substantiating the appellants' drug-trafficking activity and their lack of any legitimate source of income, it was reasonable for the jury to infer that the wired money constituted drug proceeds. Id. What is lacking in this record is any evidence that the appellants' transactions were designed in whole or in part to conceal or disguise their drug proceeds. As demonstrated by the appellants' handwriting samples, they used their own names when sending the money to Chicago, and there is no evidence to suggest that the money was received by any persons other than those named

in the Western Union records.[3]  Without any evidence of concealment, it is impossible to find that appellants <u>knew</u> of such a design.

As we stated in <u>United States v. Rockelman</u>, the money- laundering statute should not be used as a "money spending statute."  49 F.3d 418, 422 (citing <u>United States v. Sanders</u>, 928 F.2d 940, 946 (10th Cir.), <u>cert. denied</u>, 502 U.S. 845 (1991)).  In other words, the mere fact that Herron and Jarrett used wire transfers to send money to Chicago cannot by itself satisfy the concealment element of the offense.  Such an interpretation of the statute would render this separate element repetitive and meaningless.  Because there is no evidence in the record that the appellants made any efforts to disguise the drug proceeds, we reverse their convictions for money laundering.

## II.

Herron also argues on appeal that, in light of the Supreme Court's decision in <u>Bailey v. United States</u>, 116 S. Ct. 501 (1995), his conviction for using a firearm "during and in relation to" a

---

[3]This fact distinguishes this case from <u>Blackmun</u> in which there was evidence that the defendant used aliases when wiring money to Los Angeles.  904 F.2d at 1253.  In all of our cases affirming convictions under 18 U.S.C. § 1956(a)(1)(B)(i), we have required evidence of concealment.  <u>See e.g.</u>, <u>United States v. Peery</u>, 977 F.2d 1230, 1234 (8th Cir. 1992) (money sent via three separate wire transfers), <u>cert. denied</u>, 507 U.S. 946 (1993); <u>United States v. Posters 'N' Things, Ltd.</u>, 969 F.2d 652, 661 (8th Cir. 1992) (commingling of proceeds from drug paraphernalia sales with legitimate business receipts), <u>aff'd</u> 511 U.S. 513 (1994); <u>United States v. Long</u>, 977 F.2d 1264, 1270 (8th Cir. 1992) ("transactions permitted . . . drug dealers to make drug money appear to be money earned through work in a legitimate job").

drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1), cannot stand.[4]  We agree.

On August 25, 1993, Corporal Bristow of the Springfield Police Department stopped an automobile driven by Herron for a traffic violation. There was another person in the passenger side of the vehicle.  Because Bristow thought Herron was acting "nervous," he made Herron get out of the car and searched him for weapons.  He found none.  After learning from the dispatcher that the vehicle would "be a good check for drugs and a gun," Bristow searched the automobile and found an automatic handgun between the seat and the console next to the driver's seat.  The weapon had a magazine in it with seven rounds and a round in the chamber ready to be fired.  The weapon was stuffed down approximately two inches and was not visible from the outside of the automobile.

At trial, the district court instructed the jury that it could find Herron guilty of the 924(c) count if it found that he used the weapon during and in relation to a drug trafficking crime.[5]  J. A. at 19.  The court defined "use" as "having a firearm available to aid in the commission of the crime . . . ."  Id.  Herron did not object to the instruction as this definition of "use" was considered correct under Eighth Circuit law at the time of his trial.  Prior to this appeal, however, the Supreme Court defined "use" under section 924(c) as "active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense."  Bailey, 116 S. Ct. at 505.

---

[4]Because Herron raised this challenge in his initial appeal brief, we distinguish this case from United States v. McKinney, 79 F.3d 105, 108-09 (8th Cir. 1996), in which this court held that the defendant had waived his claim under Bailey.  See also, United States v. Webster, 84 F.3d 1056, 1065 n.6. (8th Cir. 1996).

[5]Although Herron was charged under both the "use" and "carry" prongs of the statute, J. A. at 9-10, the court only instructed the jury as to use.  J. A. at 19.

The Court stated further that "liability attaches only to cases of actual use, not intended use, as when an offender places a firearm with the intent to use it later, if necessary."  Id. at 507.

Because Herron did not object to the jury instruction, we may reverse his conviction only if the district court committed plain error.  Fed. R. Crim. P. 52(b).  We first must determine whether the district court's error was "plain" and whether it "affected the defendant's substantial rights." United States v. Olano, 507 U.S. 725, 732 (1993).  Even if those conditions are met, we exercise our discretion to reverse only where the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings."  Id. at 736.

As in United States v. Webster, 84 F.3d 1056, 1067 (8th Cir. 1996), we apply the law applicable at the time of this appeal and hold that the district court's error was plain in light of Bailey.  Id. at 1067.  As the government concedes, the court's definition of "use" does not comport with Bailey's "active-employment" definition.  Herron also has established that the error affected the outcome of the district court proceedings because the instruction permitted the jury to convict Herron "even though it might not have found the factual predicate required by Bailey."  Id.  Finally, because it is unclear whether a properly instructed jury would have found Herron guilty of violating section 924(c)(1), failure to correct the district court's error could result in a "miscarriage of justice" and would "seriously affect the fairness, integrity, or public reputation of judicial proceedings."  Id. (quoting Olano, 507 U.S. at 736).  We thus exercise our discretion under Rule 52(b) and reverse Herron's conviction.  Because we

8

reverse for trial error, we remand for a new trial with proper jury instructions on the 924(c) charge.[6]  See id.

### III.

All six appellants challenge the sentences imposed for their cocaine base-related crimes, based on the 100:1 sentencing ratio between cocaine base and powder cocaine.[7]  Specifically, the appellants raise two separate arguments:  (1) because cocaine and cocaine base are the same drug, the statute and the sentencing guidelines are ambiguous and the district court should have applied the rule of lenity to impose the lesser penalty provided for cocaine offenses, and (2) the district court erred in not granting the appellants a downward departure under U.S.S.G. § 5K2.0 because the sentencing disparity presents a mitigating circumstance not adequately taken into consideration by the guidelines.  Appellant McKinney additionally argues that the guidelines violate his Fifth Amendment right to equal protection because there is no rational basis for the disparate sentences for cocaine and cocaine base.

At their sentencing hearings, the appellants presented the expert testimony of Dr. James Woodford.[8]  Dr. Woodford testified that the terms "cocaine" and "cocaine base" are synonymous:

---

[6]On remand, the government may proceed under either the "use" or the "carry" prong of the statute, or both, as consistent with the original indictment.  Herron may raise any appropriate defenses at that time.

[7]The substantive statute under which the appellants were convicted imposes a ten-year mandatory minimum for either five kilograms of cocaine or 50 grams of a mixture or substance containing cocaine base.  21 U.S.C. § 841(b)(1)(A)(ii)(II), (iii).  The guidelines similarly impose the 100:1 ratio in severity of sentences for offenses involving cocaine base versus powder cocaine.  U.S.S.G. § 2D1.1(c).

[8]Dr. Woodford testified at Herron's sentencing hearing.  The transcript of his testimony was then incorporated into each of the sentencing hearings of the other appellants.

9

Cocaine base is cocaine before it is mixed with any other substance. Herron Sentencing Tr. at 22. Moreover, Dr. Woodford testified that crack cocaine, the substance to which Congress intended the stiffer penalty to apply was a potent, deadly drug from Jamaica--much more deadly than cocaine or cocaine base. Id. at 24-26. He contended that crack cocaine, as it was known in the 1980s, no longer exists. Id. at 23.

To further buttress their arguments before the district court, the appellants pointed to the United States Sentencing Commission's proposed amendment to the guidelines, submitted to Congress in May 1995, which recommended elimination of the distinction between powder and crack cocaine in sentencing. Submission Notice, 60 Fed. Reg. 25,074, 25,076 (1995). The Commission, "deeply concerned that almost ninety percent of offenders convicted of crack cocaine offenses in the federal courts are Black," concluded that "sufficient policy bases for the current penalty differential do not exist." Id.

The district court was persuaded. At Herron's sentencing hearing, the judge stated:

> I agree almost 100 percent with the defendant's sentencing memorandum, that there is no substantial difference between cocaine base and cocaine powder. . . . The 100 to 1 ratio is absolutely ridiculous. . . . I think the sentence called for in this case is extremely excessive. You have a person who has never been convicted of a crime before looking at 35 years of sentence.

Herron Sentencing Tr. at 52, 58. Bound by this court's prior decisions, however, the district court denied the appellants relief and sentenced the appellants as follows: Herron and Jarrett received forty-year terms; Nelson twenty-four years, four months; McKinney fifteen years, eight months; Estell eleven years, three months; and Glover ten years, one month.

The district court correctly determined that this court has considered and rejected each of appellants' arguments. In <u>United States v. Jackson</u>, 64 F.3d 1213 (8th Cir. 1995), <u>cert. denied</u>, 116 S. Ct. 966 (1996), we found the argument for application of the rule of lenity meritless because of the "practical, real-world differences" between crack and other forms of cocaine. <u>Id</u>. at 1220. While it did not address the unique argument presented in this case--that "crack," as previously understood, no longer exists--<u>Jackson</u> nonetheless is controlling. As in <u>Jackson</u>, the appellants do not contend that they were unaware they were dealing in crack or could not distinguish between the two. <u>See</u> <u>id</u>. (argument failed, in part, because defendants did not demonstrate inability to distinguish between the drugs).

Similarly, this court has previously determined that the 100:1 sentencing ratio is not a basis upon which a court may rely to depart downward under U.S.S.G. § 5K2.0. <u>See</u> <u>United States v. Lewis</u>, 90 F.3d 302, 304 (8th Cir. 1996) ("The crack/powder ratio and its disparate impact are not `aggravating or mitigating circumstances' particular to the appellants' case which distinguish theirs from `heartland' cases."); <u>United States v. Higgs</u>, 72 F.3d 69, 70 (8th Cir. 1995) (per curiam). As we stated in <u>Lewis</u>, the Sentencing Commission's recommendation to eliminate the distinction between cocaine base and powder does not prove that Congress did not intend to impose longer sentences for cocaine powder; in fact, Congress' rejection of the recommendation indicates the opposite. <u>Lewis</u>, 90 F.3d at 305 (citing <u>Higgs</u>, 72 F.3d at 70). It is not the court's role to decide whether the ratio is "wise or equitable." <u>Id</u>. at 306.

Finally, in light of this circuit's numerous decisions finding a rational basis for the 100:1 sentencing disparity in the statute and the guidelines, we also reject McKinney's equal protection challenge to his sentence. <u>See</u> <u>e.g</u>, <u>United States v. Clary</u>, 34 F.3d 709, 712 (8th Cir. 1994) (citing to seventeen previous Eighth

11

Circuit decisions upholding the constitutionality of the statute), <u>cert. denied</u>, 115 S. Ct. 1172 (1995); <u>United States v. Willis</u>, 967 F.2d 1220, 1225 (8th Cir. 1992); <u>United States v. Buckner</u>, 894 F.2d 975, 980 (8th Cir. 1990).  Thus, we affirm each appellant's sentence.[9]

IV.

The appellants' remaining challenges to their convictions are without merit.[10]  Accordingly, we reverse Herron's and Jarrett's money-laundering convictions, reverse Herron's conviction for use of a firearm, and affirm the appellants' sentences for the cocaine base-related counts.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[9]This author continues to believe that the sentencing disparity is unconstitutional for the reasons stated in my concurring opinion in <u>United States v. Willis</u>, 967 F.2d 1220, 1226 (8th Cir. 1992) (J. Heaney, concurring).  Recognizing the binding effect of this court's prior decisions, however, I simply reiterate that belief and encourage the court to reconsider this important issue en banc.

[10]The remaining challenges are as follows:  Herron argues that the district court erred in limiting his cross-examination of a government witness; Jarrett contends that the district court should have instructed the jury on a coercion defense; and Glover asserts that the police officers violated the Fourth Amendment in searching her motel room.